[Civ. No. 18527. Second Dist., Div. Two. Mar. 13, 1952.]

DAVID SANDERS et al., Respondents, v. PARK BEVERLY CORPORATION (a Corporation) et al., Appellants.

S. L. Kurland and Simon, Fox & Fraider for Appellants.

Victor Bewley and Kimball Fletcher, Jr., for Respondents.

MOORE, P. J.—Judgment was awarded respondents against appellant corporation and its president for damages arising out of fraudulent statements made in the course of negotiations for the sale of two apartment buildings in Los Angeles. Reversal is demanded on the grounds of (1) insufficiency of the evidence to establish fraud, (2) nonreliance by respondents "upon any representation," (3) errors in rulings at the trial.

When the buildings were offered for sale in August, 1949, president Perry prepared a brochure[1] describing them. Among other factual recitals, the booklet declared that the premises grossed an average monthly income of $3,720. It was delivered to appellants' agents, Newcomb and Taggart, on September 14, 1949. Respondents learned of the properties through their own broker, one Franklin, and with him first visited the premises on November 7, 1949. All subsequent negotiations were conducted by respondents and Franklin with appellants' brokers. They had no personal contact with Perry. After several inspections of the buildings, relying upon declarations in the brochure, respondents offered to purchase both buildings and their furniture and furnishings for $200,000. Appellants accepted, whereupon an escrow agreement was executed by the parties on November 30, 1949, and the transaction was duly closed. Within the succeeding month, however, respondents made a pertinent discovery, to wit: that the average monthly income from the buildings for the six months immediately preceding the date of sale had been substantially less than that published in the brochure. Immediately following such denouement respondents served a notice of rescission of the purchase on the ground of fraud and promptly filed this action in eight counts to enforce their demand, for restoration of all moneys paid to appellants and for a cancellation of notes executed in partial payment of the purchase price, and in the alternative for damages. Prior to the trial respondents elected to stand upon their claim for damages and dismissed all counts for equitable relief. The court made findings of fact in pursuance of respondents' allegations: that appellants had fraudulently misrepresented the gross income of the buildings and the minimum rentals being received for the apartments at the time of their negotiations with respondents.

■ There is ample proof to support the findings. The brochure's recitals as to the income were that the average, monthly, gross receipts were $3,720. The booklet was prepared and distributed by Perry. While, under later questioning by respondents as to the apartment income, Perry told respondents that the $3,720 represented the average monthly income as computed by his auditors for the first seven months of 1949, yet when requested to produce more recent figures, Perry's reply was that the average monthly income of $3,720 was his latest information and that he had

[1]Appellants referred to it as a "setup."

no other record of income. Such statement was proved to be false by the fact that Perry had been, and was still receiving a monthly written report of gross income from his apartment house manager. Moreover, testimony established that daily records were checked many times during each month. Also, as proof of Perry's knowledge of the true income, testimony was introduced to show that in late September, 1949, Perry ordered his manager to attempt to achieve a gross income of $3,150 for the month of October. Such evidence, when believed as against conflicting proof, establishes more than "mere silence without actionable fraud." as appellants assert. On the contrary, it discloses an affirmative course of conduct consisting of misstatements, half-truths and concealments of known material facts, all designed to deceive respondents and to prevent discovery of the true fact that the income during and prior to the interval of the negotiations was actually less than the amount represented by appellants. Such misrepresentations as to the earnings of an income-bearing property in a community where taxes are high and cost of maintenance is burdensome, could have been made only for the purpose and with the intent, as the court found, that respondents rely thereon. They constitute a lawful, sufficient and proper basis for a finding that appellants' conduct was fraudulent (*Chamberlain* v. *Wakefield*, 95 Cal.App.2d 280, 288 [213 P.2d 62]).

Appellants contend that the evidence compels application of the rule that when a purchaser undertakes to make his own investigation and is allowed to proceed without hindrance, he is presumed to have acquired full knowledge of all the facts necessary for his guidance, and that he relied upon his own investigation and the information thereby acquired and not upon representation of the vendor. They cite *Cameron* v. *Cameron*, 88 Cal.App.2d 585, 593 [199 P.2d 443]; *Carpenter* v. *Hamilton*, 18 Cal.App.2d 69, 71 [62 P.2d 1397], in support of such doctrine and they argue that Mr. Sanders is actively engaged in dealing with income property; that he retained a broker to assist him in the negotiations; that he had inspected the buildings four or more times. Therefore, they urge, he must necessarily have relied upon his own investigation.

The answer to such contention is not far to seek. Respondents' investigation was not complete and could not have been made without hindrance. The income and expense records of the buildings were not available for their perusal. In

702

fact it was insisted at the time that such records did not exist. Thus respondents merely inspected the physical features of the buildings and did not acquire a full, dependable knowledge of the productive powers of the property to which they were entitled from appellants. Moreover, after a vendor has by his false representations or concealments deceived a purchaser into buying a property he comes with poor grace to deny the vendee's right to rely upon such misrepresentations. ▉ One who deliberately makes positive assertions that are untrue will not avoid responsibility for his wrongful act by saying that his adversary was not compelled to rely upon them. He must show that his statements were not in fact relied upon. (*Dow* v. *Swain,* 125 Cal. 674 [58 P. 271].) ▉ While there is a reasonable duty for a buyer to investigate, the question as to whether the known facts were sufficient to put him on inquiry is a fact for the trial court. (*Bank of America* v. *Greenbach,* 98 Cal.App.2d 220, 235 [219 P.2d 814].) It follows that respondents were not precluded from relying upon appellants' statements where their falsity was not apparent from an inspection. (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 748 [192 P.2d 935].)

▉ It is contended that damages were not proved despite the studied opinion of an expert appraiser and the intelligent and reasonable observations of Mr. Sanders. Both testified that the true market value of the two apartment buildings at the time of the sale was $170,000. The objections interposed as to the bases for such opinions are merely arguments on the weight to be given to such testimony but they were not adequate to defeat the admissibility of the opinions. In view of the price of $200,000 paid for properties, proved to have been worth not to exceed $170,000, damage in the amount of $20,000 has been generously established.

Three rulings on the admissibility of evidence are criticized. ▉ (1) When Mr. Sanders was interrogated upon the question of value he was told to base his testimony on "anything you want to take into consideration." There are three answers to that criticism. (a) No objection was made to the court's inclusion of the last quoted phrase in the question. Neither was a motion made to strike the answer. (b) As owner of property, a witness may testify as to value without qualifying as an expert. (*Stroman* v. *Lynch,* 91 Cal. App.2d 406, 408 [205 P.2d 409].) As owner, therefore, he had more freedom of expression with reference to the value of his property. (c) The witness did not consider anything

that was improper in giving his opinion, or anything violative of section 3343 of the Civil Code. (2) A general objection was interposed to a question propounded to Mrs. Farrel, manager of the apartments as to their gross income for January, 1950. It was sustained. (3) Criticism is made of "lengthy testimony that the actual expenses were *less* than that set forth in the description of the operating expenses in the brochure." Such proof was necessarily favorable to appellants.

Judgment affirmed.

McComb, J., concurred.

Mr. Justice Fox, deeming himself disqualified, declines to participate in the decision.

Appellants' petition for a hearing by the Supreme Court was denied May 8, 1952.