[Civ. No. 5124.  Fourth Dist.  Sept. 28, 1955.]

ANITA FRIEDBERG et al., Appellants, v. MITCHEL R. WEISSBUCH et al., Respondents.

Nottbusch & Nottbusch, Martin E. Epman and Ralph N. Highsmith for Appellants.

McInnis, Hamilton & Fitzgerald and John W. McInnis for Respondents.

MUSSELL, J.—This is an action for damages for the alleged breach of a written lease and purchase agreement and an amendment thereto. The property involved consisted of real property in La Mesa, San Diego County, together with furniture, fixtures, medical equipment and other personal property, the good will of a medical practice, and the use of a trade name.

The trial court rendered judgment for the defendants, lessees and purchasers, on the ground that the agreements were void because of fraud and misrepresentations on the part of the plaintiffs, lessors and vendors, which induced defendants to enter into said agreements. Plaintiffs appeal from

the judgment and contend that the findings are not supported by the evidence and that the defendants waived fraud.

The evidence, viewed in the light most favorable to the respondents (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]) is as follows: Defendant, Dr. Mitchel R. Weissbuch, who had been practicing in Chicago, came to California in December, 1946, seeking to establish a medical practice here. He met with Dr. Irwin Friedberg who owned the premises and equipment herein involved at La Mesa. The premises were then occupied by Dr. Robert D. Cloyes. Dr. Weissbuch was told by Dr. Friedberg that Dr. Cloyes was actively practicing at the premises and would move out of the community in March of 1947; that when Dr. Cloyes moved out of town all the medical practice in the office would go to Dr. Weissbuch; that he (Friedberg) had between a $40,000 and $50,000 a year practice; that he had been offered $35,000 for the real property but had turned it down because it was inadequate, and that the value of the property was in excess of $35,000. Relying on these statements, Dr. Weissbuch agreed to pay $25,000 for a 49 per cent interest in the property and an agreement was executed to that effect on December 21, 1946. Dr. Weissbuch returned to Chicago and early in January, 1947, Dr. Friedberg notified him that Dr. Cloyes had vacated the premises and they were available to him. Dr. Weissbuch then returned to La Mesa on or about January 7, 1947, and commenced practice. On February 21, 1947, Dr. Friedberg and Dr. Weissbuch entered into a new written agreement of lease and purchase. It is this agreement and the amendment thereto, dated May 7, 1947, which are involved in this action. This agreement provided for the lease of the property to Dr. Weissbuch for a term of five years at $200 per month, plus the sum equal to 10 per cent of the gross income therefrom in excess of $12,000 per year. The receipt of $1,200 in cash was acknowledged as payment of the last six months' rent. Dr. Friedberg also agreed therein to sell an undivided one-half interest in the property leased to Dr. Weissbuch for the sum of $18,000. Dr. Weissbuch agreed to pay a monthly sum equal to 10 per cent of the gross income in excess of $12,000 on the purchase price, with a minimum payment of $50 per month for the first six months of the lease and $100 per month for the remainder of the term. It was further provided that Dr. Friedberg, to the extent that he was able and desired to do so, could continue in the practice of medicine at said location and in association with Dr. Weiss-

buch under certain specified conditions. In case of the default of Dr. Weissbuch under the purchase provisions of the agreement, Dr. Friedberg was given the right to terminate the purchase agreement on 60 days' notice and in the event of a default of the lease provisions he was authorized to terminate the entire agreement. It was provided in said agreement that in case of default under the lease provisions, Dr. Weissbuch would sell all his interest in the then good will of the practice to Dr. Friedberg for the sum of $1.00 and would refrain from practicing in a designated area. All prior agreements between the parties were expressly canceled. On May 7, 1947, an amendment to the contract was executed by the parties providing that the $50 minimum payments should continue during the entire term of the lease instead of for the first six months and providing that a failure to meet these payments should be regarded in the same light as default of the lease provisions of the agreement.

Dr. Weissbuch believed at the time he signed the agreement involved that the real property he was purchasing was worth $36,000, or more, as represented by Dr. Friedberg, and that Dr. Friedberg had a gross income from his business of between $40,000 and $50,000 per year, as represented. Dr. Weissbuch occupied the premises and conducted his profession therein until April 11, 1949. A short time prior thereto Dr. Friedberg called upon him and wanted him to agree to an extension of the lease. Dr. Weissbuch refused and vacated the premises.

The medical practice which was turned over to Dr. Weissbuch did not gross the amount represented by Dr. Friedberg. Dr. Friedberg admitted that he had last conducted an active medical practice on a full time basis in La Mesa in the latter part of 1945. He admitted that he had purchased the real property involved in 1944 for $11,000. A realtor called as a witness by defendants testified that the same property had a market value of $16,000 to $18,000 in 1947, and the same value in 1954. Evidence was received showing that Dr. Friedberg was tubercular at the time the agreements were signed and that fact was not discovered by Dr. Weissbuch until some time in March, 1947. There was also evidence that certain items of office equipment were not of the value represented by Dr. Friedberg.

The trial court found, among other things, that when Dr. Cloyes vacated the premises he was dissatisfied with his lease agreement and left the leased premises, taking a list of the

active patients with him and setting up his practice in La Mesa; that the property described in the lease agreement was purchased by plaintiffs in 1944 for a total consideration of $11,500, which included not only the real estate but the equipment for a medical office; that in December, 1946, the plaintiffs represented to defendants that the value of the property in question had a market value of $50,000 and that it was grossing $4,000 a month income; that defendants did not examine the books in the plaintiffs' office but relied entirely upon the statements of the plaintiffs; that at the time of the making of the said statements, the plaintiff, Dr. Friedberg, was afflicted with tuberculosis, which fact was not communicated to the defendants and that the defendants did not know of his condition until after the agreement herein was executed; that at the trial Dr. Friedberg gave his estimation of the valuation of the leased real estate in 1947 at $25,000, the medical equipment at $10,000 and the good will at $12,000; that expert witnesses on valuations gave as valuations and it is the fact that the real estate had a valuation in 1947 of from $16,000 to $18,000, and the medical equipment had a valuation of $2,000; that the value, if any, of the good will was questionable; that the defendants relied on the integrity, advice and ability of Dr. Friedberg and that the statements of facts relative to the value of the real property, medical equipment and gross income of plaintiffs as made by Dr. Friedberg to the defendants were false, untrue and material misrepresentations of the fact made with the intent to induce the defendants to enter into the agreement involved and that Dr. Friedberg did not disclose to the defendants that he was tubercular; that the defendants relied upon the misrepresentation of fact made by the plaintiffs and would not have entered into the contract herein had they known that said representations were not true and correct. These findings are supported by substantial evidence and cannot be here disturbed.

Actual fraud is a question of fact (Civ. Code, § 1574); and like any other fact, it may be proved by circumstantial evidence. (*Palmquist* v. *Mercer*, 43 Cal.2d 92, 100 [272 P.2d 26].)

A single material misrepresentation justifiably relied upon is sufficient ground for rescission of a contract. (*Lobdell* v. *Miller*, 114 Cal.App.2d 328, 336 [250 P.2d 357].) In *Willson* v. *Municipal Bond Co.*, 7 Cal.2d 144, 150 [59 P.2d 974], it is held that the determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon

facts and circumstances existing at the time the statement is made; that when a statement as to value is made as a positive affirmation of a fact, and is intended as such by the party making it, and such statement is false and is known to be false by the person making it, and such statement is relied upon by the person to whom it is made, then such false statement is actionable; and that where there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the facts.

In *Stumpf* v. *Lawrence*, 4 Cal.App.2d 373, 376-377 [40 P.2d 920], it is said: "The statement of the owner of property with respect to its value is usually considered the expression of a mere opinion on his part which may not become the basis of a suit for damages for fraud on that account. But when a positive statement of the value of property is made by the owner, coupled with other asserted facts or circumstances like a false representation of past income therefrom, it may constitute competent evidence in proof of the alleged fraudulent representations upon which a judgment for damages may be supported."

In *People* v. *Bennett*, 122 Cal.App.2d 244, 252 [264 P.2d 664], it is held that:

"There is authority to the effect that where defendant's opinions were given concomitantly with his statements of fact, which gave material support to his opinions and expressed to men who were ignorant of the true facts, there was actionable fraud . . ."

In the instant case there is substantial evidence that Dr. Friedberg made material representations to defendants as to the value of the real property being sold, as to the value of the medical equipment and good will of the business, as to the gross return of the business, and the activities of Dr. Cloyes, as well as to the state of health of Dr. Friedberg; that these representations were false and known to be false by Dr. Friedberg; that the representations were made with an intent to induce defendants to enter into the contracts involved; and that defendants acted in reliance upon such false representations.

Appellants argue that the defendants, by entering into subsequent agreements with the plaintiffs, waived fraud. We are not in accord with this contention. The subsequent agreement referred to was merely a reduction in the monthly

payments required by the contract and its other provisions were not thereby affected.

In *California Credit etc. Corp.* v. *Goodin,* 76 Cal.App. 785, 794 [246 P. 121], it is held that section 3412 of the Civil Code ''gives a specific remedy for the cancellation of a contract obtained by fraud or which is voidable for other reasons, or is void, and as has been shown the cases above named and others not named are as one in holding that, where a note or other contract has been obtained by fraud, and innocent third parties have not acquired equities therein, the defendant, instead of proceeding under section 3412 of the Civil Code, 'may abide his time, and when enforcement is sought against him, excuse himself from performance by proof of fraud.' ''

The question of whether the delay of defendants in the instant case was such as to render it inequitable to grant relief from fraud was a question for the trial court and is left to its sound discretion. (*Stevenson* v. *Boyd,* 153 Cal. 630, 638 [96 P. 284, 19 L.R.A.N.S. 525].) In *Filice & Perrelli C. Co., Inc.* v. *Walton,* 95 Cal.App. 7, 10 [271 P. 1096], it was held that where the defendants were induced to sign an agreement by misrepresentations of plaintiff they were not bound to rescind but were entitled to plead the fraud in defense of plaintiff's action on the purported contract.

In *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935], it is held that an independent investigation or an examination of property does not preclude reliance upon representations where the falsity of the statement is not apparent from an inspection, where the person making the representations has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance; that where a party learns he has been defrauded, he may, instead of rescinding, elect to stand on the contract and sue for damages, and in such case his continued performance of the agreement does not constitute a waiver of his action for damages. It is further said therein that there is serious doubt whether even a granted request of a favor, such as an extension of time, could be held to constitute a waiver in the absence of estoppel or the making of a new agreement supported by consideration.

In *Lobdell* v. *Miller,* 114 Cal.App.2d 328, 338, *supra,* it was held that the fact that plaintiffs obtained concessions from the defendant and obtained an agreement to pay interest only and the principal payments would be waived for a specified

time, did not necessarily establish a waiver of the claimed fraud.

In *Hefferan* v. *Freebairn*, 34 Cal.2d 715, 722 [214 P.2d 386], it is held that the defense of waiver raises an issue of fact to be decided after a consideration of all the circumstances of the particular case, and is a question primarily for the trial court.

In view of what we have heretofore said, it is unnecessary for us to pass upon the other issues raised by appellants.

The judgment is affirmed.

Griffin, Acting P. J., and Shell, J. pro tem.,* concurred.

A petition for a rehearing was denied October 24, 1955.

*Assigned by Chairman of Judicial Council.