[Civ. No. 18387. First Dist., Div. Two. June 30, 1960.]

RONALD L. BUIST et al., Plaintiffs and Respondents, v. C. DUDLEY DeVELBISS CORPORATION (a Corporation), Appellant; WOODWARD-CLYDE AND ASSOCIATES (a Corporation) et al., Cross-Defendants and Respondents.

MacDonald, Brunsell, Brethauer & Walters and Harry D. Miller for Appellant.

Allan L. Sapiro and Arthur N. Ziegler for Plaintiffs and Respondents.

Philip M. Madden, Wallace, Garrison, Norton & Ray, John M. Roberts, and Hall, Henry, Oliver & McReavy for Cross-Defendants and Respondents.

KAUFMAN, P. J.—The respondents, Ronald L. Buist and Leona M. Buist, husband and wife, sued the appellant, C. Dudley DeVelbiss Corporation, for damages for fraud, breach of contract and failure of consideration, in the sale to them of a hillside house and lot in the Hawthorne Terrace area of the Tiburon peninsula. DeVelbiss filed a cross-complaint alleging that the injury to the respondents' property was caused by the negligence and carelessness of Woodward-Clyde and Associates, the soil engineers, retained by DeVelbiss to report on the condition of soil. The court, after a nonjury trial, found for the respondents on the grounds of fraud and dismissed the cross-complaint.

On this appeal, which is from both the judgment in favor of the respondents and the judgment dismissing the cross-complaint, the appellant argues that: (1) the trial court's finding of fraud is not supported by the evidence; (2) the award of damages was impossible and unsupportable; (3) the dismissal of the cross-complaint is not supported by the evidence. There is no merit in any of these contentions.

The trial court found the following facts: on October 6, 1954, the appellant, a subdivider and contractor, was in the course of constructing a residence on its Lot 36 Hawthorne Terrace in Tiburon; on October 6, 1954, the house and lot were sold to the respondents for $14,000; that appellant completed construction and delivered possession of the property on December 30, 1954. At the time of the sale, Lot 36 was not suitable for the construction of a residence as the lot was in the area of an ancient slide and in an area of underground water, and the house was constructed on fill placed on the lot without adequate compaction or compaction tests. Appellant knew these facts about the lot and failed to disclose the true condition of Lot 36 and its unsuitability for building purposes. At the time of sale to the Buists, the property was of a nominal value only and not worth $14,000. After taking possession of the property, respondents expended labor and materials for landscaping, terracing and gardening in the amount of $3,452.68. By reason of the subsidence caused by the unsuitability of the lot for building purposes, these improvements were substantially damaged and destroyed. From these facts, the trial court concluded that the appellant committed fraud upon the Buists by failing to disclose the true condition of the property to them, in misrepresenting the condition to them, and negligence in the construction of a residence thereon, and that, therefore, the Buists were entitled to damages in the amount of $17,452.68.

The first argument on appeal is that the evidence does not support the finding of fraud. ■■■ It is our duty on appeal to view the evidence in the light most favorable to the party who was successful in the trial court, and if there is any substantial evidence to support the findings, then the findings must remain as the facts in the case. ■■■ Where the appellant urges the insufficiency of the evidence to sustain the findings, the rule is that he must demonstrate that there is no substantial evidence to support the challenged findings. ■■■ When two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substi-

tute its deduction for those of the trial court. (*Ashburn* v. *Miller,* 161 Cal.App.2d 71.)

The trial court here found four separate acts of fraud committed by the appellant: (1) an affirmative representation by appellant's agent that Lot 36 was on cut when in fact it was on fill; (2) that appellant knew but failed to disclose that the lot was in the area of an ancient slide; (3) that the appellant knew but failed to disclose that the lot was known to be in an area of underground water; (4) that appellant knew but failed to disclose that fill was knowingly placed on the lot without proper compaction.

The evidence adequately supports each of these findings. █ As to the finding of an affirmative representation that the lot was constructed on cut, the appellant argues that no representation was made, or in the alternative, that if made, the respondents did not rely thereon. The uncontroverted evidence shows that the Southern Marin Realty Company was the exclusive agent for the area where respondents' home is located. Southern Marin solicited offers and brought them to the appellant for its approval. No agreement could become binding until the purchaser was approved by the appellant. On October 3, 1954, the Buists discussed the purchase of real estate in Tiburon, with a representative of Southern Marin. When the salesman took the Buists to Lot 36 on October 3, the foundation and subflooring of the house were already in place. Mr. and Mrs. Buist made no examination of the premises other than the view. In reply to their questions, the salesman said that the lot was a cut and on hard ground. It is not denied that the appellant was responsible for the representations of its agent, the real estate salesman. (*Wilbur* v. *Wilson,* 179 Cal.App.2d 314, 317 [3 Cal.Rptr. 770]; *Worthen* v. *Jackson,* 139 Cal.App.2d 615 [293 P.2d 797].)

There was some conflicting evidence from appellant's employees that only a portion of the lot was on fill. Mr. Clyde, one of the cross-defendants, however, testified that there was fill on Lot 36 starting with 0 at the front of the premises to a depth of 10 feet in the rear. A profile sketch of the house and lot showed there was fill on Lot 36 under the house and above the original grade. It is up to the trial court to resolve conflicts in the evidence. (*New* v. *New,* 148 Cal.App.2d 372 [306 P.2d 987].)

Under these circumstances, appellant's duty of disclosure is clear. ██ The rules were well stated in *Rothstein* v. *Janss Investment Corp.,* 45 Cal.App.2d 64 at 68 [113 P.2d 465]:

". . . When and where the action by the purchaser is based on conditions that are visible and that a personal inspection at once discloses and, when it is admitted that such personal inspection was in fact made, then manifestly it cannot be successfully contended that the purchaser relied upon any alleged misrepresentations with regard to such visible conditions. But personal inspection is no defense when and where the conditions are not visible and are known only to the seller, and 'where material facts are accessible to the vendor only and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such facts to the vendee.' *Clauser* v. *Taylor,* 44 Cal.App.2d 453 [112 P.2d 661] . . ."

On October 3, the Buists made a deposit of $1.00 and thereafter signed a deposit receipt which stated in paragraph 10: "No representations, guarantees or warranties of any kind or character have been made by any party hereto, or their representatives, which are not herein expressed." Appellant argues that this statement on the deposit receipt shows that no representations were made. The evidence of fraudulent representations inducing the execution of a contract is admissible as an exception to the parole evidence rule. (*Mooney* v. *Cyriacks,* 185 Cal. 70 [195 P. 922].) It is equally well established that a principal is under a positive duty to make a disclosure and cannot escape liability for failure to do so by relying on a contract provision to the effect that there are no other representations than those made in the written agreement. (*Herzog* v. *Capital Co.,* 27 Cal.2d 349, 354 [164 P. 2d 8].)

Appellant also argues that the misrepresentation was not material, but this likewise was a matter for the trial court. (*Ashburn* v. *Miller,* 161 Cal.App.2d 71 [326 P.2d 229].) A misrepresentation or concealment of the known fact of a fill in a lot sold to another constitutes material inducement which works fraud upon the buyer, who is ignorant of the fact. (*Ashburn* v. *Miller,* 161 Cal.App.2d 71, 79 [326 P.2d 229]; *Worthen* v. *Jackson,* 139 Cal.App.2d 615 [293 P.2d 797]; *Blackman* v. *Howes,* 82 Cal.App.2d 275 [185 P.2d 1019, 174 A.L.R. 1004]; *Rothstein* v. *Janss Investment Corp.,* 45 Cal.App.2d 64 [113 P.2d 465].)

As to the finding that the appellant failed to disclose the fact that the lot was in the area of an ancient slide and underground water, and that the fill was improperly com-

pacted, the evidence indicates that Woodward-Clyde and Associates were retained by the appellant to make soil investigations in the area in question in order to comply with the FHA requirements. About May 3, 1954, the soil engineers made compaction tests on Lots 34, 35, 36, 37 and 38. Before this time, two compaction tests had been made on Lot 36, when there was very little fill on the lot. These tests did not come up to standard. Because of the poor results, no further tests were undertaken on these lots. About 10 tests were usually required before a grading operation could be accepted by the soil engineer. On May 13, 1954, an excavation on Lot 38 uncovered a water seepage condition and the soils did not look good. Lots 36, 37 and 38 were found to be on the toe of an ancient slide. On the same date, Woodward-Clyde told the appellant to discontinue grading in the area of these lots until further advised by the soil engineers. Clyde notified Woodward of the water, ancient slide and soil conditions. On May 14, 1954, Woodward met appellant's president, Peacock, at the site of Lots 36, 37 and 38, and instructed the appellant not to build on these lots as they were not suitable for building purposes because of the ancient slide and underground water. The construction on Lot 36 began about September, 1954.

Fraud may consist of suppression or concealment of facts respecting the property in the knowledge of one party and not known to the other where there is a duty to declare, as well as in the declaration of that which is false. (Civ. Code, § 1572, subd. 3; Civ. Code, § 1710, subd 3; *Doran* v. *Milland Development Co.*, 159 Cal.App.2d 322, 324 [323 P.2d 792].) As pointed out above, there is no question that the appellant here was under a duty to disclose the facts that materially affect the value and desirability of the property which were known to him but not to the respondents. This is particularly true where the buyer is not competent to judge the facts without expert advice. (*Burkett* v. *J. A. Thompson & Son*, 150 Cal.App.2d 523, 527 [310 P.2d 56].) Knowledge of the party charged with concealment and the materiality of the concealment are both questions of fact. (*Curran* v. *Heslop*, 115 Cal.App.2d 476 [252 P.2d 378]; *Worthen* v. *Jackson*, 139 Cal.App.2d 615 [293 P.2d 797].)

The authorities cited by the appellant are not pertinent here. We think *Burkett* v. *J. A. Thompson & Son*, 150 Cal.App.2d 523 [310 P.2d 56], wherein the court affirmed a judgment for the purchaser on two grounds of fraud (concealment of the fact that the lot had been filled and not properly com-

pacted and positive misrepresentation that the house was built on original land) is particularly pertinent here.

The second argument on appeal is that the evidence does not support the finding that the property was of nominal value only. Appellant argues that the respondents should not have been permitted to both recover damages and retain the property. It is hornbook law that one who has been defrauded may elect to rescind the contract or to affirm it, retain what he has received and sue for damages for fraud. (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935]; *Dillon* v. *Sumner,* 153 Cal.App.2d 639, 645 [315 P.2d 84]; *Friedberg* v. *Weissbuch,* 135 Cal.App.2d 750, 756 [287 P.2d 785]; *Alton* v. *Rogers,* 127 Cal.App.2d 667, 680 [274 P.2d 487].) The right of election belongs to the defrauded party alone. (*Quarg* v. *Scher,* 136 Cal. 406, 411 [69 P. 96].) No offer to return that which has been received is necessary. (*Laurence* v. *Kilgore,* 154 Cal. 310 [97 P. 760].)

Section 3343 of the Civil Code sets forth the proper measure of damages for fraud as follows: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled. [Added by Stats. 1935, p. 1612.]"

This section was enacted to provide a uniform rule for all fraud cases and provides the exclusive measure of damages. (*Lawson* v. *Town & Country Shops, Inc.,* 159 Cal.App.2d 196 [323 P.2d 843].)

There was ample evidence to support the finding of the trial court that the house or lot was of nominal value. The Buists moved into the house on December 30, 1954. About ten days later, in January, 1955, the first slide occurred. Appellant took certain protective measures but a second slide and subsidence of the soil occurred in April, 1955. After the first slide, the back or downhill side of the lot fell away. Test borings in the front yard or uphill side, filled with water and water shot out of these holes, spraying the house with mud. The appellant constructed additional protection, and in the summer of 1955, the respondents put in a patio and landscaped the property. The third slide began in January, 1956,

and continued until the time of trial in February, 1958. The cause of these slides was the underground water, the ancient slide and the fill. Appellant made no attempt to further correct the situation. The house began to settle, and the outside wall cracked. The surface under the house was wet or damp and the flooring was "springing." The cost of the improvements damaged and destroyed by the slides was $3,452.68.

Respondents' witness Hackney, a licensed real estate appraiser, testified that the market value of the property was zero and that it could not be sold because of the slide problem. His estimate of a value of $3,250 for the lot was its value prior to any of the slides. Another expert witness estimated the cost of correcting the condition on Lot 36 to be between $10,000 and $20,000. He explained, however, that even if this work were done, there would be no guarantee that there would not be a recurrence of the same condition. He, therefore, would not recommend that these corrective procedures be undertaken. Mr. Buist testified that the property had no market value and that adjacent property owners on the hillside below Lot 36 considered it to be a potential nuisance. As the house was located on the downhill portion of Lot 36, it would be difficult and expensive to attempt to move the house.

The actual value of property may be determined by the trial court from evidence of the reasonable market value or of actual or intrinsic value. (*Herzog* v. *Capital Co.*, 27 Cal. 2d 349 [164 P.2d 8]; *Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290 [149 P.2d 177]; *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935]; *Martin* v. *Tully,* 44 Cal.App.2d 226 [112 P.2d 282].) Market value may be proved by the testimony of an expert such as an appraiser and the owner may testify as to the value of his property without qualifying as an expert. (*Sanders* v. *Park Beverly Corp.*, 109 Cal.App.2d 698 [241 P.2d 597].) "The unqualified language of section 3343 indicates that the plaintiff should receive as damages the difference in value between everything with which he parted and everything he received, and the statute contains nothing to show that the difference must be calculated solely on the basis of the facts existing at the time the contract was made or performed. The section must be applied realistically so as to give the defrauded person his actual out-of-pocket loss, and, where necessary, to reach that result, the court must consider subsequent circumstances . . ." (*Garrett* v. *Perry,* **53** Cal.2d 178 at 184 [346 P.2d 758].) When these rules are applied to the facts of the instant case, there can be no

question that the trial court properly assessed the measure of damages as the difference between the amount paid for the realty and the actual value of the property received. (*Hartwigsen* v. *Ditto*, 156 Cal.App.2d 811 [320 P.2d 114].) Appellant's authorities relate to rescission proceedings where the applicable rule is that restoration must be tendered prior to instituting the action.

We turn now briefly to appellant's argument that his cross-complaint against the soil engineers was improperly dismissed because the evidence indicates that these independent experts were negligent and their negligence relieves the appellant of any fraud. As indicated above, there was ample evidence to show that in May, 1954, several months before construction began, the soil engineers had informed the appellant that Lots 36, 37 and 38, were not suitable for building purposes because of the ancient slide and underground water area. Thereafter, the soil engineers did no further work on those three lots. It was not until after the first slide of January, 1955, that the soil engineers discovered that the appellant had constructed a residence on Lot 36. We have not overlooked the denials of the appellant or the other evidence favorable to its side of the case on the cross-complaint. We are not free to weigh the evidence or to accept that favorable to appellant.

In view of the foregoing, the judgments must be and are hereby affirmed.

Draper, J., concurred.

STONE, J. pro tem.,* Concurring and Dissenting.—I agree with the majority opinion which awards respondents the entire purchase price of $14,000 plus the value of all improvements placed on the property by them in the sum of $3,452.68, but I would also require that respondents return the property to appellant. Respondents in their complaint allege that they paid $14,000 for the property and in addition $3,452.68 for improvements and landscaping. Their prayer for relief reads as follows:

"1. For general damages in the sum of $10,000.00.

"2. For $14,000.00 consideration paid by the plaintiffs to the defendants.

"3. For the sum of $3452.68 for landscaping and improvements made by the plaintiffs.

---

*Assigned by Chairman of Judicial Council.

"4. For cost of suit incurred and to be incurred herein.

"5. For such other and further relief as to the Court may seem meet and proper in the premises."

Thus, respondents did in substance file an action in rescission seeking restitution. The relief afforded by the court was consonant with restitution since their claim for general damages was denied and they were awarded the $14,000 consideration and $3,452.68 for improvements. An allowance of damages for the costs of improvements in addition to return of the consideration is proper (*Lobdell* v. *Miller,* 114 Cal.App.2d 328, 334 [250 P.2d 357]). But it is my opinion that the court should have also ordered the return of the property to the appellant (*Alder* v. *Drudis,* 30 Cal.2d 372, 384 [182 P.2d 195]). It would appear that if the filled land is as likely to slide, spilling the soil and improvements on the neighboring land as was indicated by the testimony, one would expect the respondents to demand that appellant take back the property in order to protect themselves from future liability.