452 F.2d 11
 UNITED FOREST PRODUCTS CO., a Division of Commander
Industries, Inc., Appellant,
v.
Earl R. BAXTER et al., Appellees.
UNITED FOREST PRODUCTS CO., a Division of Commander
Industries, Inc., Appellee,
v.
Earl R. BAXTER et al., Appellants.
UNITED FOREST PRODUCTS CO., a Division of Commander
Industries, Inc., Appellee,
v.
Earl R. BAXTER et al., Appellants.
 Nos. 20316-20318.
 United States Court of Appeals,
Eighth Circuit.
 Dec. 9, 1971.
 
 1
 Eugene Davis, Des Moines, Iowa, for United Forest Products Co.
 
 
 2
 Donald A. Wine, Des Moines, Iowa, for Earl Baxter and others.
 
 
 3
 James G. Milani, Centerville, Iowa, for Virgil Baxter.
 
 
 4
 Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge and HANSON, District Judge.
 
 
 5
 HANSON, District Judge.
 
 
 6
 This controversy involves a law action for damages emanating from alleged fraud in the sale of the stock of a corporation. Involved herein was a separate action against defendant Earl R. Baxter for alleged violation of employment contract and covenant not to compete. Defendants Counterclaimed for wrongful attachment. All matters in the separate causes were merged and consolidated for trial.
 
 
 7
 These causes of action were submitted to a jury by way of twenty-two special interrogatories. No question is raised or has been raised as to the form or substance of the interrogatories or that they were not determinative of all issues involved. Inconsistency of answer is not raised. Judgments in the respective causes were entered pursuant to the jury's answers to the special interrogatories. The jury actually left all parties in the same status they entertained before the trial. In summary it found that one or more of the defendants had committed one or more acts of fraud, that defendant Earl R. Baxter had violated his employment agreement, that the defendant Earl R. Baxter had not violated the covenant not to compete, that plaintiff had not wrongfully attached defendants' funds, that plaintiff had waived its right of recovery for one or more acts of fraud committed by one or more of the defendants, and that plaintiff had waived its right of recovery against Earl R. Baxter regarding his breach of his employment contract.
 
 
 8
 Judgment was entered in favor of all defendants as it relates to plaintiff's claim for damages resulting from fraud. Judgment was entered in favor of defendant Earl R. Baxter regarding his breach of his employment contract and claim for breaching the covenant not to compete.
 
 
 9
 Judgment was entered in favor of plaintiff regarding defendants' Counterclaim for wrongful attachment.
 
 
 10
 The plaintiff appeals to this Court on a single issue in Cause No. 20316. The plaintiff says that the Court erred in its instruction to the jury on the subject of waiver.
 
 
 11
 All defendants, either jointly or separately, cross-appeal in defense of the judgment below, urging that even if the instructions were error, it would be harmless for the reason that the Court erred in failing to sustain their motions for directed verdict.
 
 
 12
 It thus becomes apparent that the reaching of the defendants' cross-appeals is solely dependent upon the results determined in the single issue raised by plaintiff.
 
 
 13
 It now appears from the record and by statements made in both of the appellant's and appellees' brief that certain facts are without controversy or substantial dispute. United Forest Products Co. was one of, and sales agent for, a group of corporations under common management, headquartered in Northern California, which have now been merged under the name of Commander Industries, Inc.
 
 
 14
 These companies engaged in the business of cutting timber, operating a sawmill, and manufacturing specialized wood products, the chief product being box shook (components for wooden boxes, cut to size).
 
 
 15
 Baxter Lumber Co., an Iowa Corporation was a producer of wooden ammunition boxes. It appears from plaintiff's Exhibit 4 that the capital stock of Baxter Lumber Co. consisted of 500 shares owned by the six defendants, as follows:
 
 
 16
 Earl R. Baxter and Willeyene Baxter 240 shares;
Virgil H. Baxter 80 shares;
Lynn O. Muse 80 shares;
Richard L. King 80 shares;
W. K. Cash 20 shares;
 -------------
Total 500 shares.
 
 
 17
 On or about the first day of February, 1967, the defendants Earl R. Baxter and Lynn O. Muse interested the plaintiff in the purchase of the stock of Baxter Lumber Co., and, as illustrated by Exhibit 4, did on February 12, 1967, enter into the signed agreement (dated February 1, 1967) for sale of the stock for $2,180,000.00 on an installment basis. The title of Exhibit 4 is indicated as "Agreement for sale of stock".
 
 
 18
 It is conceded by all that subsequently and on the 24th day of April, 1967, all parties executed an instrument in the record referred to as Exhibit 6. The instrument is entitled, "Agreement for sale of stock". In the preamble of the instrument it begins by saying "This Agreement is made effective Feb. 1st, 1967, and amends and clarifies that certain agreement for sale of stock of Baxter Lumber Company heretofore entered into by and between etc.".
 
 
 19
 All other factual determinations in the case must be gleaned from answers of the Jury to the special interrogatories submitted.
 
 
 20
 It is our belief that ultimate disposition can here be made by solution of the single issue raised by plaintiff relating to instructions given by the trial Court. The Honorable Roy L. Stephenson, Chief Judge, presiding, submitted this case to the Jury on 39 instructions consisting of 81 pages and 22 interrogatories consisting of 12 pages. Needless to say, a perusal of the record will indicate a long and complicated trial which involved the learned trial Court in difficult and complex legal problems.
 
 
 21
 This is a diversity case with no jurisdictional problems and no conflicts as to the applicable law. Plaintiff complains as to Instruction No. 13.[1] The claim is made that it is not a correct and complete statement of Iowa law; that the law is not properly applied to the facts; that it is not fairly balanced and on the whole is erroneous and prejudicial, and is so improper as to require a new trial on the issue of waiver.
 
 
 22
 We do not agree with the conclusions of the plaintiff and therefore affirm.
 
 
 23
 The plaintiff by way of Proposed Instruction No. 11[2] sets out the provisions which it contends would be and should have been the instruction.
 
 
 24
 Careful comparison and analysis of plaintiff's Proposed Instruction No. 11 and the Court's submitted Instruction No. 13 are highly revealing. Paragraph one of said Proposed Instruction No. 11 and Paragraph one of the Court's submitted Instruction No. 13 are identical. Paragraph 3 of said Proposed Instruction No. 11 and Paragraph 4 of the Court's submitted Instruction No. 13 are identical. Paragraph 4 of said Proposed Instruction No. 11 and Paragraph 5 of the Court's submitted Instruction No. 13 are identical, except one used the words "asked and received" and the other "obtained". Paragraph 5 of plaintiff's Proposed Instruction No. 11 and Paragraph 6 of the Court's submitted Instruction No. 13 are identical, except that Paragraph 5 of said Proposed Instruction No. 11 contains the addition of the words "or that at such time plaintiff could not have insisted upon a cancellation without losing a profit it would have enjoyed had it been fairly dealt with, or suffering actual injury".
 
 
 25
 The bothersome portions of the instructions and where there are differences as to approach are contained in Paragraph 2 of the plaintiff's Proposed Instruction No. 11 and Paragraphs 2 and 3 of the Court's submitted Instruction No. 13.
 
 
 26
 There is no disagreement here as to definition of waiver and there is actually no other great variance except the portion contained in Paragraph 2 of the Court's submitted Instruction No. 13 with words "a general rule" to end of Paragraph. There is contained in this Paragraph what is referred to as "general rule" and the word "presumed" that causes concern to plaintiff. The plaintiff says at Page 49 of its Brief and Argument the following, to-wit:
 
 
 27
 "The instruction would have been substantially correct had the Court not injected the so-called 'general rule' and 'presumption' and its pointed comment regarding Mr. Schwab's silence, into the middle of the instruction. But having mentioned these matters, the only way the Court could have cured the error would have been to explain fully the basis, meaning and effect of the 'presumption' and to balance its mention of the elements favorable to defendants with a like mention of the elements favorable to plaintiff, in order that the jury could render a true verdict upon Iowa law."
 
 
 28
 It will be observed that the plaintiff in its proposed Instruction No. 11 at Paragraph 4 and the Court by its statement as to the general rule of law make the same requirements and both would conclude that the plaintiff would not be entitled to recover. In addition, the Judge in the second Paragraph of Instruction No. 13 defines waiver-and again in Paragraph 5 of Instruction No. 13 makes note of intentional relinquishment in the same manner as does plaintiff in the Proposed Instruction No. 11, Paragraph 4. We make note of this because of the heavy emphasis indicated in plaintiff's contentions.
 
 
 29
 It is without dispute here and could not be disputed that the entrenched definition of waiver was properly placed in the submitted Instruction No. 13. The definition set forth in Commercial Insurance Co. of Newark v. Burnquist, D.C., 105 F.Supp. 920, 938:
 
 
 30
 "Waiver is the intentional relinquishment of a known right; it is the expression of an intention not to insist upon what the law affords. It is consensual in its nature; the intention may be inferred from conduct, and the knowledge may be actual or constructive, but both knowledge and intent are essential elements."
 
 
 31
 is not only Iowa law but generally accepted, so much so that citation of authority is unnecessary.
 
 
 32
 It must be conclusively inferred here from the Jury's answers to special interrogatories and it appears without argument that contract for sale of stock was entered into on February 12, 1967. The parties operated under this contract until the 24th day of April, 1967 when Exhibit 6 was entered into by and between the parties. It is obvious that the plaintiffs knew of the alleged fraud complained of prior to the execution of the second instrument. The crucial issue becomes apparent: this relates to whether the subsequent agreement manifested and was a material changing of the rights of the parties. Whether we refer to major concessions, new agreement, or amended and modified agreement is of little consequence. It is important that there must be a finding that after the discovered fraud, the defrauded party entered into an agreement which materially changed the provisions originally agreed upon by the parties.
 
 
 33
 There are certain general rules of law which are here accepted without controversy. For instance, where a contract has been procured by fraud, the defrauded party upon discovery may pursue certain courses of action, one being by recission, the other by affirmance and recovery for damages. 13 A.L.R.2d 811-815. From this legal premise emanate general rules. If while affirming, however, the defrauded party with knowledge of the fraud asks and receives a material concession, substantial modification or enters into a new contract, courts have generally recognized a further rule of law applying to this situation. This involves dealings between seller and buyer of property after the purchaser or buyer has become cognizant of the seller's fraud and thus precipitates the question of waiver for damages. Thus we have the rule prescribed in 106 A.L.R. 173:
 
 
 34
 "It is the general rule that if one induced by misrepresentations or fraud to purchase, or to enter into a contract for the purchase of, property, thereafter, with knowledge of the deception, receives from the seller some substantial concession or enters into a new contract in respect of the transaction, he thereby relinquishes all right to recover or recoup damages because of the misrepresentations."
 
 
 35
 Then again in 37 Am.Jur.2d, Section 397, a general rule in slightly different verbage:
 
 
 36
 "It is the general rule that if one induced by misrepresentations or fraud to deal in or acquire, or to enter into a contract for the acquisition or use of, property thereafter, with knowledge of the deception, receives from the party guilty of fraud some substantial concession or enters into a new contract in respect of the transaction, he thereby relinquishes all right to recover or recoup damages because of the misrepresentations. The rule obtains where the defrauded party complains of the fraud at the time the concession is made to, or the new contract obtained by, him as well as where he remains silent in reference thereto."
 
 
 37
 We note with interest that in 37 C.J.S. Fraud Sec. 69-the general statement is as follows:
 
 
 38
 "A right of action for fraud may be waived. Thus, while the defrauded party may retain what he received, stand to his bargain, and recover for the loss occasioned by the fraud, he cannot do so where, having full knowledge, he does an act indicating his intention to waive the fraud."
 
 
 39
 Again in 37 C.J.S. Fraud Sec. 69, page 364:
 
 
 40
 "Where the person defrauded after having knowledge of the fraud enters into a new contract concerning the same subject matter, or an agreement modifying the original contract, or renews the original contract for an additional term, or asks favors, as, for example, requesting an extension of time for performance, he will ordinarily be regarded as having waived the fraud in the original transaction, but even under these circumstances the question remains one of intent."
 
 
 41
 Plaintiff here emphasizes over and over again its distress in the Court's failure to go more deeply into the matter of intent. Plaintiff in substance argues that the general rule expressed by the Court in Instruction 13 is not the Iowa law. There can be no doubt that under the Federal Rules of Civil Procedure (Rule 8) waiver is an affirmative defense. The Court here saw the issue of waiver as one of fact for the consideration of the jury and placed the burden of proof squarely on the shoulders of the asserting defendants. In the submission by way of Instruction 13, the Judge said after properly defining "waiver":
 
 
 42
 "You are instructed that, as a general rule, if one who is induced by misrepresentations or fraud to enter into a contract for the purchase of property subsequently, with knowledge of the deception, enters into a new contract governing the transaction or receives some substantial concession from the party guilty of fraud, he is presumed to thereby relinquish or waive all right to recover or recoup damages because of the misrepresentations."
 
 
 43
 This quote is almost identical to the general rules hereinbefore set out, with the exception of the use of the word "presumed."
 
 
 44
 After carefully defining "material modification", he concluded the instruction vividly and precisely with elements that defendant must establish in order to bar plaintiff's recovery. It was as follows, to-wit:
 
 
 45
 "But if you find that by executing the agreement of April 24, 1967, plaintiff did not intentionally relinquish a known right, or that the agreement was not materially modified, or that plaintiff did not receive some substantial concession or that plaintiff did not have full knowledge of the facts concerning the fraud and the resulting damages, then defendants have not established their affirmative defense and plaintiff would not be barred from recovery on the claim asserted in Division I of their complaint."
 
 
 46
 The Court particularly notes two Iowa cases, one of which may be considered the most recent statement of the law in Iowa, Timmerman v. Gurnsey, 206 Iowa 35, 217 N.W. 879 (1928). The other is perhaps the first leading case on the subject, Bean v. Bickley, 187 Iowa 689, 174 N.W. 675 (1919). This is not to say that the more recent cases have not touched on at least some aspects of the problem, the most recent of which is Christy v. Heil, 255 Iowa 602, 123 N.W.2d 408 (1963). It may further be observed that the vast majority of cases relied on by both plaintiff and defendant are either cited in these cases or these cases have been cited in them. The rigidity of the rule and the latitude of the rule are encompassed within the law stated in these two cases.
 
 
 47
 In Timmerman v. Gurnsey, supra, the plaintiff and defendant entered into a lease on December 10, 1925, for a term of two years from March 1st, 1926, on a cash rental basis. During the planting season of 1926, the defendant discovered he had been defrauded. On September 11, 1926, all parties met and signed an agreement endorsed on the lease whereby plaintiff agreed to cancel it on March 1st, 1927, provided all terms were complied with except the payment of the second year's rent which was to be cancelled. Defendants met with some problem in payment of the rent notes and the plaintiff brought suit on the notes. Defendants counter-claimed for fraud. Defendants made no claim of fraud until they were sued on the note. Defendants in the lower Court received a verdict in their favor. The Supreme Court of Iowa reversed saying the plaintiff was entitled to a directed verdict. The Court said:
 
 
 48
 "Under circumstances such as appear here, the law as quite generally recognized is that defendants by entering into the new agreement materially changing the rights of the parties as they would be under the old one, waived the fraud, waived not merely their right to rescind, but waived their right to action for damages. [Citations omitted] This court has held that a waiver of the right to damages does not result from merely obtaining an extension of time or change in terms of payment. Bean v. Bickley, 187 Iowa, 689, 174 N.W. 675. It does not appear that in that case defendants asked for or obtained relinquishment of any part of his liability, or that the obligations of the contract after discovering the fraud were materially altered. In Walnut Bank v. Mueller, 202 Iowa, 961, 211 N.W. 215, the defendant renewed his note, and it is there said that he did not thereby waive his claim for damages though he affirmed the contract. See Hagen v. Barry, 194 Iowa 1207, 190 N.W. 958."
 
 
 49
 A careful reading of this case indicates clearly that the Court steadfastly clings to the general rule prescribed in the Instruction. Here the Court found there was a material change in the rights of the parties by subsequent agreement. Furthermore, the Courts recognize the observation made in Bean v. Bickley, supra, that extension of time and change in terms of payment was not sufficient change of rights. The Court further stated:
 
 
 50
 "That the plaintiffs, on signing the cancellation agreement, expected to get the first year's rent in full is a necessary inference from the agreement. Ordinary honesty and fairness in dealing would require defendants, if they did not on entering into the new agreement expect to pay the rent as they agreed, if they intended to set up fraud and to claim damages on account of it, to say so before obtaining from plaintiff a release of half their obligation. Defendants in getting such important concession ought not to be permitted to reserve in concealment an intent and purpose directly or indirectly to avoid payment of what they, with full knowledge of the facts, deliberately agreed to pay."
 
 
 51
 The earlier case of Bean v. Bickley, supra, is a case wherein the plaintiff had sold land to the defendant and had sued to recover the balance of the purchase price. The defendant counterclaimed for damages, claiming fraud in the inducement of the contract. One of the principles of law involved the rule denying damages where the fraud is discovered by the buyer while the contract is executory, in whole or in part. The only variance from original contract, indicated in the case, was the fact that the defendant asked and obtained an extension of time wherein to make his payments. The appellant in the case urged that where a false representation obtained the contract and the fraud is discovered while such contract is wholly executory; he then proceeding to carry out the contract cannot then claim damages because it is self-inflicted.
 
 
 52
 The Iowa Court then proceeded to say at 187 Iowa 711, 174 N.W. at 684:
 
 
 53
 "The true interpretation of the rule is that if the contract remains executory in whole or in part when the fraud is discovered, and no injury will be suffered by rescinding instead of affirming, then any injury caused by proceeding is self-inflicted."
 
 Further it was stated:
 
 54
 "There is not and there should not be a general rule, even in an executory contract, that mere discovery and proceeding bars all rights to redress. That must depend on the situation of the wronged party. He should not be compelled to refrain from affirming and proceeding further if rescinding will lose him a profit he would have enjoyed had he been fairly dealt with-much less if rescinding will cause him actual injury. It will be found, upon careful examination, that the cases which, on surface reading, declare that acts of affirmance waive damages are invariably cases (and some of them note the fact) wherein the defrauded party could save himself from further loss by rescinding, and would suffer no injury therefrom."
 
 
 55
 The Court ultimately concluded the rule of self-inflicted injuries did not govern the case.
 
 
 56
 There is little doubt that the Bean case, supra, is distinguishable. All that happened was an extension of time of payments. There was no relinquishment of liability. The contract after discovery of the fraud was not materially altered. The Bean case is a pure case of affirmance after discovery of fraud.
 
 
 57
 The instructions very adroitly let the jury determine whether there was such material change as would bring about waiver of fraud. It is obvious from the jury's findings that they determined a material change. Once this is established, the Timmerman rule applies.
 
 
 58
 The rule is well recognized by the Eighth Circuit in Phillips Petroleum Co. v. Rau Const. Co., 130 F.2d 499. At page 502, the Court said:
 
 
 59
 "The authorities are unanimous in holding that where one has been induced by fraud to enter into a contract and, after discovery of the fraud, enters into an agreement concerning the subject matter of the contract, or demands and receives from the other party any substantial concession in respect to the transaction, he is conclusively deemed to have waived any claim for damages on account of fraud."
 
 
 60
 Additional authority is found in Wellens v. Beck, 84 N.W.2d 345 (N.D.1957) and Weitzman v. Bergstrom, 75 Wash.2d 693, 453 P.2d 860 (1969). Many other authorities could be cited but the whipping horse of all will be found in the 1897 case of Schmidt v. Mesmer, 116 Cal. 267, 48 P. 54 which said:
 
 
 61
 "If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must, on his part, comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud."
 
 
 62
 The rigidity of this rule was modified and relaxed in 1948 by the Supreme Court of California in Bagdasarian v. Gragnon, 31 Cal.2d 744, 192 P.2d 935, where the Court said in recognizing other jurisdictions the following:
 
 
 63
 "On the other hand the courts of some jurisdictions have held, in cases where favors have been extended, either that there was no waiver or that the question of intent to waive was one of fact for the jury. Buob v. Feenaughty Machinery Co., 191 Wash. 477, 71 P.2d 559; Graham-Jones Motor Co. v. Nutter, 77 Colo. 74, 234 P. 1063; Bean v. Bickley, 187 Iowa 689, 174 N.W. 675, 686; Garrett v. Neitzel, 48 Idaho 727, 285 P. 472; see Timmerman v. Gurnsey, 206 Iowa 35, 217 N.W. 879, 880. In the Buob case the court said that it would not be reasonable to suppose that a waiver resulted either from an agreement by a seller to put the article sold in proper condition or from an extension of time for payments on the buyer's notes. Cf. 5 Williston on Contracts, Rev.Ed., 1937, 4268, Sec. 1524, suggesting that an extension of time or change in terms of payment might not be given the effect of waiving fraud."
 
 Further stating:
 
 64
 "We think it unjust and unreasonable to hold as a matter of law that the mere asking of a favor should deprive an innocent person of rights arising from an unquestionably fraudulent act, and we therefore disapprove of the language in Schmidt v. Mesmer, 116 Cal. 267, 270, 271, 48 P. 54, to the extent that it indicates that the making of a request that is not complied with in itself constitutes a waiver without regard to the circumstances under which it is made."
 
 
 65
 This was further emphasized in Friedberg v. Weissbuch, 135 Cal.App.2d 750, 287 P.2d 785 (1955) and Lawson v. Town & Country Shops, Inc., 159 Cal.App.2d 196, 323 P.2d 843 (1958). The position was also taken in Weitzman v. Bergstrom, supra. None of these cases impinge upon the established rule that where there has been a finding of material change in the contract it will result in waiver. The above cases address themselves to the Iowa law and clearly follow the teachings of Iowa cases herein set out. The Court in its instructions here clearly announced the Iowa rule. The Timmerman and Bean cases, supra, can and do live peaceably side by side thus somewhat refuting the philosophy that contemporary and ancient decisions are incompatible.
 
 
 66
 The plaintiff complains as to Instruction 13 because in the Court's statement of the general rule of law he uses the word "presumed." No doubt the word "presumed" is not used in 106 A.L.R. 173 general rule; nor do we find it in 37 Am.Jur.2d, Section 397. However in 37 C.J.S. Fraud Sec. 69, page 364, the rule uses the words "ordinarily be regarded as having waived." It thus becomes obvious if the word has any significance it detracts from the strength of the rule. The instruction here as it relates to the word "presumed" is entirely ineffective. The party here against whom any presumption works already has the burden of persuasion that the fact of a material change does not exist. Defendant here alleges the affirmative defense of waiver and must prove it by a preponderance of the evidence. The rule of law here announced clearly shows that fraud is waived as a matter of law if it be found the defrauded party received a material concession from the defrauding party after the fraud had been discovered. Surely, under the Timmerman, supra, rule if it were found there was a material concession or change, it would then be a conclusive presumption. The plaintiff has cited Uniform Rules of Evidence, particularly Rule 14, indicating this reflects Iowa law as it relates to presumption. This rule does not apply to conclusive or irrefutable presumptions. The use of the word "presumed" in any event inures to the benefit of the plaintiff and the use is here considered as harmless error. The clarity of the instruction erases any possible confusion so far as the jury would be concerned. Any experienced trial judge well knows that a jury is not baffled by the complaint here urged.
 
 
 67
 The necessary issues for ultimate decision in this cause having now been disposed of, affirmance is required.
 
 
 68
 Affirmed.
 
 
 
 [1]
 Court's Instruction re Waiver as Finally Submitted:
 "INSTRUCTION 13
 Defendants allege, as an affirmative defense, that plaintiff has waived its right to recover damages against the defendants by reason of the execution of the amended and clarified agreement of sale on April 24, 1967. The burden is upon the defendants to establish this affirmative defense by a preponderance of the evidence.
 The term 'waiver' refers to an intentional relinquishment of a known right. You are instructed that, as a general rule, if one who is induced by misrepresentations or fraud to enter into a contract for the purchase of property subsequently, with knowledge of the deception, enters into a new contract governing the transaction or receives some substantial concession from the party guilty of fraud, he is presumed to thereby relinquish or waive all right to recover or recoup damages because of the misrepresentations. This rule applies even though the party claiming the fraud remains silent concerning the fraud during the negotiations in which the new contract or concession in his favor is secured, and retains a secret intention to later sue for damages. It is for you, the jury, to determine from all the facts and circumstances shown in the evidence whether plaintiff waived its right to recover damages from the defendants by entering into the April 24, 1967, agreement. In order for there to have been a waiver, it must be established that there was a material change in the agreement to the benefit of the plaintiff, and that the plaintiff at the time of such change had full knowledge of the facts constituting the fraud and of the damages resulting therefrom. If the plaintiff did not have full knowledge of such facts at the time of the change, or if the change was not as to a material matter or matters, then there would be no waiver.
 By the term 'material modification' as used in this instruction is meant a change in the essential terms of the agreement and not merely to such items as an extension or change in the terms of payment or the like.
 If you find that defendants have established by a preponderance of the evidence that by the execution of the agreement of April 24, 1967, the plaintiff intentionally relinquished a known right in that it obtained a material modification of the agreement, as defined herein, with full knowledge of the facts constituting the fraud and the damages resulting therefrom, then the defendants have established their affirmative defense and plaintiff would not be able to recover on the claim asserted in Division I of its complaint.
 But if you find that by executing the agreement of April 24, 1967, plaintiff did not intentionally relinquish a known right, or that the agreement was not materially modified, or that plaintiff did not receive some substantial concession or that plaintiff did not have full knowledge of the facts concerning the fraud and the resulting damages, then defendants have not established their affirmative defense and plaintiff would not be barred from recovery on the claim asserted in Division I of their complaint."
 
 
 [2]
 Plaintiff's Requested Instruction re Waiver:
 "REQUESTED INSTRUCTION NO. 11
 For their affirmative defense, the defendants allege that plaintiff has waived its right to recover damages against the defendants by reason of the execution of the amended and clarified agreement of sale on April 24, 1967. The burden is upon the defendants to establish this affirmative defense by a preponderance of the evidence.
 The term 'waiver' refers to an intentional relinquishment of a known right. The intent of the parties is to be determined by you from all of the facts and circumstances shown in the evidence. In order for there to have been a waiver, it must be established that there was a material change in the agreement to the benefit of plaintiff, and that plaintiff at the time of such change had full knowledge of all of the facts constituting the fraud and of the damages resulting therefrom. If plaintiff did not have full knowledge of such facts at the time of the change, or if the change was not as to a material matter or matters, or if by asking a cancellation of the contract plaintiff would have lost a profit it would have enjoyed had it been fairly dealt with, or would have suffered actual loss, then there would be no waiver.
 By the term 'material modification' as used in this instruction, the Court refers to a change in the essential terms of the agreement and not merely to such items as an extension or change in the terms of payment or the like.
 If you find that defendants have established by a preponderance of the evidence that by execution of the April 24th agreement the plaintiff intentionally relinquished a known right in that it asked and received a material modification of the agreement, as defined herein, with full knowledge of the facts constituting the fraud and the damages resulting therefrom, then defendants would have established their affirmative defense and plaintiff would not be entitled to recover.
 But if you find that by executing the April 24th agreement plaintiff did not intentionally relinquish a known right, or that the agreement was not materially modified, or that plaintiff did not have full knowledge of the facts concerning the fraud and the resulting damages, or that at such time plaintiff could not have insisted upon a cancellation of the contract without losing a profit it would have enjoyed had it been fairly dealt with, or suffering actual injury, then defendants have not established their affirmative defense and your verdict will be for the plaintiff, provided plaintiff has established the elements of its case as described elsewhere in these instructions".