[Civ. No. 6018. Fourth Dist. Mar. 2, 1960.]

JOHN H. ROBERTS et al., Appellants, v. ALTHEA E. KARR, as Administratrix, etc., Respondent.

Andrews & Andrews, Chester R. Andrews and Richard D. Andrews for Appellants.

Hansen, McCormick, Barstow & Sheppard for Respondent.

COUGHLIN, J.—This is an appeal by the plaintiffs from a judgment awarding them $300 damages upon the ground that the amount thereof was inadequate.

The complaint in this case sets forth two causes of action the allegations of which, with one exception, are substantially identical.

With respect to the issue of liability, it is alleged that in July, 1955, the plaintiffs "employed" E. R. Karr, a licensed surveyor, who now is deceased, to survey certain real property owned by them, to determine the elevation thereof, and to determine the amount of dirt which could be removed in leveling it to an elevation of one foot above street grade; that, thereafter, Karr reported to and informed plaintiffs that at least 51,000 cubic yards of dirt could be removed from the property "in leveling" the same and that the "leveling" could be accomplished without the necessity of making any fills; that plaintiffs relied on this report and, in reliance thereon, entered into a contract for the sale of this property for subdivision purposes, in which contract the "benefit to be derived from the sale of dirt resulting from the leveling" as aforesaid would accrue to plaintiffs as an addition to the purchase price; that the calculations made by Karr were so negligently done that the report made by him was wholly inaccurate and erroneous; that no dirt could be removed from the property "in so leveling it" and certain parts thereof "required filling rather than cutting" to conform to the aforesaid elevation; that in August, 1956, excess dirt on said property had a reasonable value of 15 cents per cubic yard in place and "plaintiffs would have enjoyed said full reasonable value of said dirt" if the report of Karr had been correct. All of the foregoing allegations were contained in the first count of the complaint. The second count thereof incorporated most of these and added allegations that plaintiffs entered into an oral contract with Karr to employ him as aforesaid; that Karr undertook and engaged to perform said surveying in a good, first class, and careful manner; and that plaintiffs performed all of the conditions to be performed by them under said contract.

The trial court, in substance, found all of the foregoing allegations to be true, except for a finding that the plaintiffs could have removed 15,802 cubic yards of dirt in "leveling" the land to the agreed elevation.

With respect to the issue of damages the allegations in both

counts were the same. It was alleged that, by reason of the negligence of Karr and "said resulting error and by reason of the plaintiffs not having the benefit of the sale of said 51,000 cubic yards of dirt, and by reason of the uncertainty, delay and confusion caused by said negligence" the plaintiffs were damaged in the sum of $7,650, less the sum of $546 realized from the sale of dirt. The court found these allegations to be untrue.

It was further alleged that by reason of said negligence the plaintiffs incurred expenses for duplicate surveying, extra leveling, and handling of dirt in the sum of $6,046.85. With respect to these allegations the court found that by reason of the negligence of Karr, as aforesaid, the plaintiffs had incurred expense for duplicate investigation, surveying and calculations in the sum of $300 and "have not incurred other expenses or damages."

Plaintiffs advance a number of grounds for reversal, however, the primary determination to be made by this court is whether the record sustains the findings of the trial court with respect to the amount of damages awarded. A consideration of this general issue disposes of most of the grounds advanced. Others concern procedural matters involving a claimed error by the trial court in allegedly not finding upon the second count of the complaint, in refusing permission to amend to conform to the proof, and in sustaining an objection to a part of plaintiffs' testimony under the "dead man's" statute, i.e., section 1880, subdivision 3 of the Code of Civil Procedure.

From the record it appears that in July, 1955, the plaintiffs employed Eugene R. Karr, a surveyor, to do some preliminary surveying with respect to the land in question. A Mr. Armstead, an employee of Mr. Karr, did the field work for this survey resulting in the preparation of a plat entitled "location survey," purporting to show the elevation of this property. There is no evidence that the plaintiffs received a copy of this plat until after certain errors therein were detected. In surveying the north half of the property Mr. Armstead improperly set his surveying instruments, which resulted in an erroneous determination with respect to the elevation of that part of the land. This error did not affect the survey of the south half of the property. Before this error was noticed the plaintiff, Mr. Roberts, asked Margaret Harp, another employee of Mr. Karr, how much excess dirt could be taken from the property. Mrs. Harp was hesitant to give

him an opinion because of an existing uncertainty with respect to the street grades, but determined that 51,000 cubic yards would be a safe figure. Thereafter she confirmed this fact with Mr. Karr and the information theretofore given Mr. Roberts was repeated upon request. With this information at hand the plaintiffs entered into a contract to sell their property for the sum of ''$100,000.00 or less, or plus,'' depending upon the amount of money received from the sale of excess dirt, ''which represents the sum of $88,000.00 and the additional amount for dirt for the land and $12,000.00 for the dwelling.'' The contract of sale, which was dated April 4, 1956, provided that the sellers might have all the buildings, pumps and improvements located on the property which they were to remove at their expense; the buyers agreed to clear and level the land to approximately one foot above the road level and to grade streets according to a designated layout; also the buyers agreed to remove and relocate an existing canal on the property. The contract further provided that ''the purchase price for said land shall be increased by the increased amount available to the *Buyers* from the sale of the surplus dirt removed from said premises over and above the cost of clearing the land and leveling as above (not surveying, grading or other expense of Buyers) . . . In the event that the total cost of clearing and leveling land and relocation of the said Gould Canal exceeds the revenue from the sale of dirt from said property, the total sales price of $100,000.00 shall be correspondingly reduced by such excess.'' (Emphasis added.)

In August, 1956, the plaintiffs started to sell dirt from the south half of the property. Upon being advised that there was an error with respect to the elevation of the north half of the property and the prospective need for dirt to be used as a fill in that portion, they caused further sales to be terminated. Mr. Roberts testified that thereafter a dispute arose between the parties respecting the ownership of excess dirt obtained from the property; and that the buyers claimed it under the terms of the aforesaid contract.

The land could not be leveled until the city had approved the street grades. This approval occurred in September, 1956, after Karr had prepared a corrected map. In November of the same year the plaintiffs employed a surveyor by the name of Rabe to make a survey of the north half of the property, and paid him $300 for his services. In December, 1956, the

leveling and grading commenced. Excess dirt from the south half of the property was stockpiled and thereafter a part of it was used as a fill on the north half of the property. When all of the leveling and grading had been completed, between 50,000 and 75,000 cubic yards of excess dirt remained piled upon the property and had to be hauled away. None of it was sold. One of the buyers testified that, ''Finally, in desperation, we paid a man to move it into another area where we are developing now.'' The cost of removal was several thousand dollars.

All parties have considered the application of the principles set forth in *Gagne* v. *Bertran,* 43 Cal.2d 481 [275 P.2d 15] to the facts of the instant case. Karr ''was selling service and not insurance. [██ Thus the general rule is applicable that those who sell their services for the guidance of others in their economic, financial and personal affairs are not liable in the absence of negligence or intentional misconduct.'' (*Gagne* v. *Bertran,* 43 Cal.2d 481, 487 [275 P.2d 15].) ██ The survey in question was negligently performed under circumstances giving rise to causes of action for deceit and for negligence. The false statement as to the amount of excess dirt constituted a misrepresentation. (*Gagne* v. *Bertran,* 43 Cal.2d 481, 490 [275 P.2d 15].) ██ As Karr did not undertake to insure the correctness of his findings, but only to exercise due care to make a survey and report his calculations based thereon, any recoverable ''damages, whether for deceit or negligence, must be measured by the actual losses suffered because of the misrepresentation.'' (*Gagne* v. *Bertran,* 43 Cal.2d 481, 490 [275 P.2d 15].) The provisions of sections 1709 and 3333 of the Civil Code govern such a situation.

██ By their complaint the plaintiffs claim the value of the excess dirt which Karr misrepresented to be present as the measure of their damage. In the case at bar, as in the cited case, the negligently performed act resulting in a misrepresentation of fact, did not cause the loss attributable to the nonexistence of the condition which, because of that misrepresentation, the plaintiffs believed did exist. Plaintiffs' alleged loss of contemplated revenue from a sale of 51,000 cubic yards of excess dirt is attributable to the fact that this amount of excess dirt did not exist, and not to the misrepresentation that such dirt did exist. The lack of excess dirt, and not the misrepresentation of fact, caused the loss of contemplated

revenue. The plaintiffs are not entitled to recover the value of the dirt that did not exist.

In like manner, plaintiffs claim that they were damaged because, under their contract they were required to bear the net cost of leveling the property, and this cost was greater than it would have been if the representation made by Karr had been correct. However, the cost of leveling was due to the condition of the land as it existed, and not to the misrepresentation respecting its condition. In other words, the increase in the actual cost of leveling over the contemplated cost of leveling was not caused by Karr's "misinformation, however, but by the physical condition of the land." (*Gagne v. Bertran,* 43 Cal.2d 481, 491 [275 P.2d 15].)

The foregoing alleged elements of damage are distinct from damage allegedly arising out of an inducement to sell upon the terms prescribed by the contract in question. In this regard, although not specifically pleaded, the plaintiffs argue, in substance, that the misrepresentation respecting the amount of available excess dirt caused them to agree to sell their property for less than they would have sold it if the misrepresentations had not been made; that they would not have agreed to sell for $100,000 plus the net proceeds from the sale of excess dirt if the misrepresentation had not been made; that, except for such misrepresentation, they would have agreed to sell the property only for $100,000 plus an amount equal to the value of the represented available excess dirt; and that, as a consequence, they were damaged in an amount equal to the difference between the price actually received for their property and the price they would have agreed to accept if the erroneous representations had not been made. This argument is based upon the contention that, under the rule in *Gagne v. Bertran,* 43 Cal.2d 481 [275 P.2d 15], as applied to the facts in this case, the plaintiffs were entitled to the benefit of their bargain, i.e., the difference between what they thought they were going to receive under the contract and what they actually did receive. This contention is not based on the result in the Gagne case, but upon what plaintiffs claim would have been the result if the plaintiff therein had been a seller of the property and not a purchaser. In support of their position plaintiffs cite *Kruse v. Miller,* 143 Cal. App.2d 656 [300 P.2d 855], involving an action by a seller of property against his broker for damages arising out of a misrepresentation made by the broker to a purchaser of that

property. However, contrary to their contention, the benefit of the bargain rule was not applied in the last cited case. Recovery was limited to out of pocket damages. To allow the plaintiffs the difference between what they thought they would receive if Karr's misrepresentation had been true and what they actually did receive would inject an element of speculation not cognizable by law. It is urged that plaintiffs were entitled to keep their property rather than to sell it for an amount less than they expected from their contract, even though this anticipated amount is greater than the actual value of the property. Such an argument deals with remote factors without the area of compensation in actions for damages.

Moreover, although the court found that the plaintiffs relied upon the representations made by Karr, there is neither allegation, finding or proof that they could have received more for their property than they actually did receive if the representations had been true. The finding of the court on the general issue of damages carries an implied finding to the contrary. Consequently, even though it be assumed that the foregoing theory of damages was presented by the pleading, the contention of the plaintiffs with respect thereto is concluded by the finding of the trial court. In their complaint it was alleged that "by reason of the plaintiffs not having the benefit of the sale of said 51,000 cubic yards of dirt" they were damaged. The trial court found these allegations untrue. This finding is sustained by the evidence, even applying the claimed measure of damages. Under the contract of sale the plaintiffs, as sellers, were entitled to the "amount available to the buyers from the sale of the surplus dirt removed from the premises." This provision is not limited to the surplus dirt obtained from leveling the premises. It includes dirt obtained from grading as well as leveling. In support of the judgment, we must accept the evidence that there were 50,000 to 75,000 cubic yards of surplus dirt from this property. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12].) None of it was sold. This surplus dirt, under the formula adopted in the contract of sale, did not result in any increase in the price to be paid plaintiffs and, based upon this fact, the trial court was entitled to infer that the 51,000 cubic yards of dirt which plaintiffs anticipated from the leveling of the property, would not have increased the price they actually did receive. It follows, that the existence of such dirt had no actual effect upon the value of the land under the cir-

cumstances of this case. The foregoing fact directs attention to another aspect in which the finding of the trial court, in respect to the allegations of general damages, forecloses plaintiffs' recovery under the measure of damages advanced by them. As heretofore noted, the contract which they executed anticipated that the amount to be received for their land might be less than $100,000 as well as more than $100,000; that there might not be any profit from the sale of surplus dirt; and that the expressed sales price should be reduced in the event that the cost of clearing and leveling the land should exceed the revenue from the sale of dirt. From these provisions alone the court was entitled to infer that the plaintiffs did not expect to receive more than they actually did receive for their land. An implied finding to this effect is included within the adverse finding on general damages. Other evidentiary factors which support the conclusion that the plaintiffs did not establish their contention respecting the amount they thought they would receive from their property if Karr's misrepresentations had been true, include the fluctuating price of excess dirt, the contract provisions which gave the buyers, and not the sellers, the right to dispose of dirt, the aforementioned failure or inability to sell 50,000 to 75,000 cubic yards of such dirt, the payment by buyers of thousands of dollars to haul this dirt away and the inference that if there had been more dirt the cost of leveling would have been greater.

In like manner, the plaintiffs argue that the representations respecting the elevation of the north half of the property caused them to agree to sell their property for less than they would have sold it if the misrepresentations had not been made. The evidence does not satisfactorily establish that the information respecting the elevation of the property was given to them prior to their execution of the contract. However, even assuming the fact to be as contended, the position of plaintiffs is not tenable. They claim that the evidence establishes that the cost of leveling was much greater than it would have been if Karr's calculations had been true, and, for that reason the price they actually received for the land was affected. Much of what has been said concerning plaintiffs' similar contention respecting damages from the misrepresentation as to excess dirt, applies to the foregoing claim. In addition, there is evidence that the cost of leveling the south half of the land, with respect to which Karr's calculations were correct, was $3,335.50, whereas the cost of leveling the north

half of the property, with respect to which Karr's calculations were incorrect, was $1,182.90. This evidence is sufficient to support an implied finding that the sales price which plaintiffs actually received for their land was not adversely affected by the actual elevation of the land and had no influence upon its value under the circumstances of this case.

The record furnishes other evidence and other inferences which would support conclusions contrary to those expressed here. ▮▮▮ However, on appeal the court is required to accept that evidence and those inferences reasonably deducible therefrom which will support the judgment even though there is other evidence and other such inferences which might support a contrary judgment. (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

▮▮ The plaintiffs also claim that the amount they received for their property was less than its market value and that, in any event, they should be awarded at least the difference between these two amounts. In *Gagne* v. *Bertran,* 43 Cal. 2d 481, 490 [275 P.2d 15] the defendant undertook to furnish the plaintiff with requested factual data; the data so furnished was erroneous; in reliance thereon plaintiff purchased certain real property allegedly resulting in damages and the court said:

"In reliance on defendant's information plaintiffs purchased the property. If the property was worth less than they paid for it, defendant is liable for the difference. On the other hand, if the lots were worth what plaintiffs paid for them, plaintiffs were not damaged by their purchase, for even though they would not have bought the lots had they known the truth, they nevertheless received property as valuable as that with which they parted."

Plaintiffs' contention is based on the claim that they sold their property for less than the market value because of the erroneous calculations made by Karr; that, except for these miscalculations they would have sold the property for its market value. Under the pleading and proof herein the foregoing rule of damages does not affect the result. The plaintiffs did not allege that they sold their property for less than its market value. Moreover, if, as they contend, evidence upon this subject was admissible under the general allegations of damage set forth in their complaint, the finding of the trial court that these allegations are untrue includes an implied finding that plaintiffs did not sell their property for less than

its market value, and is supported by the record. After submission of the case, the trial court rendered a written opinion indicating reliance upon *Gagne* v. *Bertran,* 43 Cal.2d 481 [275 P.2d 15], and concluded that the only recoverable damage was the expense incurred by plaintiffs for the resurvey, which cost $300. Thereupon, over objection, the plaintiffs obtained permission to reopen their case in order that they might adduce evidence establishing that they sold their property for less than its market value. At a subsequent hearing, evidence pro and con upon this issue was presented. The plaintiffs moved for permission to amend their complaint to conform to the proof. This motion together with the case on its merits was submitted subject to the filing of briefs. Thereafter, in a written opinion and order denying plaintiffs' motion to amend, it was stated: "Furthermore, the Court concludes from the evidence that the land was sold at its reasonable market value and that plaintiffs were not damaged by the sale." Judgment for plaintiffs in the sum of $300 as previously announced, was directed. We have reviewed the record and have concluded that there is substantial evidence therein to support the foregoing conclusion of the trial court.

Upon the issue of value a trial judge is not required to accept the opinion of witnesses; nor view the property; but may make his own determination of the ultimate fact from a review of all of the evidence before him. (*Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.,* 128 Cal.App. 743 [18 P.2d 413] ; *Rose* v. *State,* 19 Cal.2d 713, 744 [123 P.2d 505].)

"The allowance or rejection of a motion to amend, is within the sound discretion of the trial court." (*Verdier* v. *Verdier,* 133 Cal.App.2d 325, 330 [284 P.2d 94].)

Fourteen months had transpired from the date the complaint had been filed to the time when permission to amend was requested; the case had been tried; the court had permitted the introduction of evidence on the primary allegations to be added by the amended pleading and concluded that they were not true. Under the circumstances, the trial court did not abuse its discretion in denying the plaintiffs' motion to file their proposed amended complaint.

Plaintiffs also contend that the trial court erred in rejecting testimony respecting services performed by Mr. Roberts in leveling the premises allegedly necessitated by Karr's error, and in holding that the "dead man's" statute had not been waived.

On the theory that Mr. Roberts rendered additional

services in leveling the land which would not have been necessary if Karr's survey had been correct, the plaintiffs sought to recover the value of these services as damages attributable to the erroneous representation. However, under the contract of sale the buyers and not the sellers, not the plaintiffs, were required to level the property. Moreover, this theory of damages is excluded by the rule in *Gagne* v. *Bertran*, 43 Cal.2d 481, 491 [275 P.2d 15]. The leveling that was done had to be done because of the condition of the land, not because of the erroneous survey. In addition, the complaint did not allege the doing of this work or its value. This is a claim for special damage which must be specially pleaded. (*Bonde* v. *Bishop*, 112 Cal.App.2d 1, 5 [245 P.2d 617].)

Upon the alleged ground that Mr. Roberts was interrogated on cross-examination with respect to matters occurring before the death of Mr. Karr, plaintiffs claim that the provision of the "dead man's" statute, i.e., section 1880, subdivision 3 of the Code of Civil Procedure, was waived; that the court erred in sustaining objections based thereon; and that further testimony from this witness was material. We have examined the record and conclude that the cross-examination of Roberts followed closely the chronology of events which were the subject of direct examination, and that it was conducted under circumstances which support the conclusion of the trial court that there was not a waiver of the statutory provisions. Defendant's attorney assiduously attempted to preserve for his client the protection of this code section, stating his position on many occasions and objecting when even the possibility of encroachment upon the prohibited field appeared. Any questions propounded on cross-examination which may have solicited answers respecting matters occurring before death were incidental in nature and not such as would support a waiver of the privilege. (*Warren* v. *Nair*, 102 Cal.App.2d 298, 301 [277 P.2d 515]; *Adams* v. *Herman*, 106 Cal.App.2d 92, 104 [234 P.2d 695].)

Plaintiffs also contend that the judgment should be reversed because the trial court failed to find upon the allegations in the second count of the complaint. The factual premise of this contention is incorrect. As heretofore stated, the allegations in both counts were substantially identical except in two particulars, but the findings of the court covered the substances of all of these allegations without exception. Moreover, the findings signed by the court were those prepared by the plaintiffs, adding only a word or phrase for the purpose of

clarity. Under the theory of invited error, this fact forecloses plaintiffs' contention. (*Johnson* v. *Rich,* 150 Cal.App.2d 740, 747 [310 P.2d 980].)

Judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied March 31, 1960, and appellants' petition for a hearing by the Supreme Court was denied April 26, 1960. Peters, J., was of the opinion that the petition should be granted.