SULLIVAN, J.
 

 Plaintiff appeals from a judgment of non-suit entered in an action for damages for fraud in the sale of real property.
 

 The complaint, filed on August 6, 1958, alleges that on June 7, 1951, the plaintiff entered into a written contract with defendants to purchase their property for $12,700 and that the transaction was thereafter consummated. It also alleges that the defendants, to induce plaintiff to purchase the property, represented that it consisted of three separate rental units in all respects complying with the requirements of law; that the defendants knew that one of the units was illegally constructed and violated the San Francisco Building Code in certain particulars; that the above facts were concealed from plaintiff who did not discover them until June 1957; and that the actual value of the property at the time of the sale was $7,000, as a result of which plaintiff was damaged in the sum of $5,700. The defendants in separate answers denied all of the above allegations pertaining to the illegal condition of the premises and the alleged fraud and pleaded certain affirmative defenses.
 
 [1]
 
 Trial was had before the court, sitting without a jury, plaintiff appearing below, as she does now before us, in propria persona.
 

 As stated in
 
 Blumberg
 
 v.
 
 M. & T. Inc.
 
 (1949) 34 Cal.2d 226, 229 [209 P.2d 1] “A trial court is justified in granting a motion for nonsuit \ . . when, and only when, disregarding conflicting evidence, and giving to plaintiff’s evidence all the
 
 *80
 
 value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. ’
 
 (Card
 
 v.
 
 Boms,
 
 210 Cal. 200, 202 [291 P. 190]; see also
 
 Hale
 
 v.
 
 Depaoli,
 
 33 Cal.2d 228, 229 [201 P.2d 1];
 
 Neel
 
 v.
 
 Mannings, Inc.,
 
 19 Cal.2d 647, 650 [122 P.2d 576];
 
 Estate of Lances,
 
 216 Cal. 397, 401 [14 P.2d 768].)”
 

 We set forth the facts in accordance with the foregoing rule.
 
 [2]
 

 Joseph Warda, a city building inspector, testified that he first visited the property in connection with a complaint not germane to this case. About a year later, in June 1957, the plaintiff who had been ill, communicated with him about the initial matter and in addition he informed her that the apartment in the basement was illegal. The witness stated that his department had no records showing when the downstairs apartment was first constructed or whether or not it was constructed when the building itself was built; that “if it was legal ... we would have a permit on it ...”; that as far as he knew the building had been constructed before the San Francisco fire of 1906; and that if the building had been constructed prior to 1906, his department might not necessarily have a permit for it, since many of the records were lost in the San Francisco fire. One reason why he did not take any action on the building violations pertaining to the basement apartment was that there might have been a permit authorizing such unit. He had no knowledge whether or not it was built with the whole building, but surmised from the architecture that the space was constructed originally as a basement but not as an apartment.
 
 [3]
 

 Warda further testified that the ceiling height in the basement area was 7 feet which apparently did not conform to the building regulations in effect at the time of trial. However, he stated that at one time, before 1906, such a ceiling height was authorized and at the time the building was built such height was “perfectly legal.” In that part of the kitchen area which was underneath the front stairs of the building, the
 
 *81
 
 ceiling height was only 4 or 5 feet. He stated that this condition “couldn’t he” legal when the building was built. He also testified that the kitchen had inadequate ventilation since the window there was too small in relation to the floor space. He was unable to give the measurement of the floor space except to state that it was less than the area required for a kitchen. The record does not indicate whether the witness was referring to minimum floor area regulations then in effect or in effect at some prior time. Nor is the record clear as to when the regulations covering ventilation, referred to by the witness, first went into effect. Upon inquiry by the court as to the first effective date of such regulations, the witness testified they were in effect as long as he could remember. He then added that the first effective date was before 1910 but otherwise gave no particulars.
 
 [4]
 

 After Mr. Warda, the plaintiff took the stand again.
 
 [5]
 
 Upon her offer, the court admitted into evidence the “Uniform Agreement of Sale and Deposit Receipt” (a printed form adopted by the San Francisco Real Estate Association) signed by the parties. The plaintiff apparently relied on the following statements appearing on the document: “33-35-37 Broderick Street, San Francisco, California. . . . Improvements consist of 3 dwelling units. . . . ‘O.P.A. established rentals: upper flat 56.25 per month . . . middle flat 39.34 . . . lower flat 20.00 . . .’ ” underneath the last of which appeared defendant Arthur Otts’ initials. Plaintiff maintained that the foregoing constituted a representation that there were “three flats.” There was also admitted into evidence a ‘ ‘ Statement to Buyer ’ ’ apparently received by the witness from Arthur Otts, upon which the plaintiff relied as containing a statement referring
 
 *82
 
 to a flat at 33 Broderick (the number of the basement apartment) together with the monthly rental for it.
 

 The plaintiff testified that the defendant Arthur Otts did not show her the basement flat prior to the sale because, as he stated, the tenant did not want to let anyone in. She further testified “Well, Mr. Otts told me it was a very livable apartment. I didn’t see it. He stated it was better than the other flats . . ,”
 
 [6]
 
 She met and talked with the defendant Adelaide Otts only once prior to the sale but could not recall the details of their conversation.
 

 The plaintiff and Mr. War da were the only witnesses called on the plaintiff’s case. No adverse party testimony was introduced pursuant to section 2055 of the Code of Civil Procedure. No evidence was introduced bearing upon the value of the property at the time the plaintiff purchased it. Of some possible relevance is the admission by the defendant Arthur Otts in his answer that at the time of the sale he was a duly licensed real estate broker. We mention this since the plaintiff’s testimony discloses an attempt on her part to claim that Mr. Otts would by virtue of being a broker have knowledge of building regulations and, therefore, be apprised of the fact that the basement flat was in violation of the law.
 

 The defendant Arthur Otts thereupon made a motion for a nonsuit upon the grounds that the evidence did not establish that the basement apartment was “illegal,” or, if it did, that it did not show that said defendant knew the apartment was “illegal,” or that he misrepresented the apartment. The defendant Adelaide Otts joined in the motion on the same grounds and on the further ground that the evidence failed to show the value of the property as a prerequisite to proving damages. The motion was granted as to both defendants. Plaintiff’s subsequent motion for a new trial was denied.
 

 Plaintiff’s contentions on appeal which we glean with some difficulty from her briefs may be stated as follows: (1) The evidence was sufficient to establish actionable fraud; (2) the defendants practiced some sort of fraud upon the court; (3) plaintiff was denied the right to introduce adverse
 
 *83
 
 party testimony; (4) the court committed other errors in the course of the trial. None of these have merit.
 

 The elements of actionable fraud are set forth in
 
 Hobart
 
 v.
 
 Hobart Estate Co.
 
 (1945) 26 Cal.2d 412, 422 [159 P.2d 958] : “In general, to establish a cause of action for fraud or deceit plaintiff must prove that a material representation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff; and that plaintiff suffered damage thereby.” (See also
 
 Nathanson
 
 v.
 
 Murphy
 
 (1955) 132 Cal.App.2d 363, 367 [282 P.2d 174]; Civ. Code, §§ 1572, 1709, 1710.)
 

 The evidence shows that the defendant Arthur Otts made certain representations to the plaintiff. In the written agreement of sale he stated that there were three flats on the property. According to plaintiff’s testimony, he stated to her that the basement was a very livable apartment and that it was better than the other flats. The foregoing seem to be the extent of his representations pertinent to the issues here. Since the plaintiff obviously knew that the apartment was in the basement, Otts’ statement that it was better than the other flats would appear to be no more than “seller’s talk” or “puff talk” and to fall within the category of expressions of opinion not supportive of actionable fraud.
 
 (Williams
 
 v.
 
 Lowenthal
 
 (1932) 124 Cal.App. 179 [12 P.2d 75].) Prom the remaining statements, however, it is reasonable to infer an implied representation by Otts that the basement apartment, whenever built, was constructed in conformity with building regulations then in effect. Such an implied representation, since it affected the desirability of the property, was one of material fact. (See
 
 Kuhn
 
 v.
 
 Gottfried
 
 (1951) 103 Cal.App.2d 80, 86 [229 P.2d 137].) The defendant therefore made a material representation.
 

 Was it false? To establish this element of the cause of action, it is essential to show that the basement apartment was built in violation of then existing regulations. We find no evidence on this point. There is a reasonable inference that the building was constructed before the 1906 earthquake and fire. There is no evidence whether or not the basement apartment was built at the time the entire building was built. Stated another way, there is no evidence that it was built afterward, or even, if added afterward, such occurred after
 
 *84
 
 1906. So far as the record shows, the entire building, including the basement apartment, was built prior to 1906 and might very well have been built in conformity with regulations, if any, then in effect. The statements of the city building inspector relating to ceiling heights and ventilation requirements do not show the violation required as a basis for the element of false representation. They were made without reference to any regulation shown to be applicable when the basement apartment was constructed; this, for the simple reason that the inspector had no knowledge and therefore could not testify when it was constructed. His statement on the 4 to 5-foot ceiling height in that part of the kitchen underneath the stairs also lacks probative value. To begin with, the record is sparse on this point. No measurements are given. While the testimony refers to a 4 to 5-foot ceiling height in “some places,” it is obvious that it is not uniform under the stairs which are presumably at an angle. More significantly the mere statement made that such height “couldn’t be” authorized, without reference to any date or applicable regulation, is conclusionary and lacking in any evidentiary value. Whatever this area underneath the stairs was, we find no evidence that the condition presented by it violated a regulation at the time it was built, whenever that was. There is therefore no evidence in the record showing that the basement apartment was constructed in violation of any building regulations in effect at that time. The plaintiff failed to prove that the above representations were false.
 

 Since there was under the evidence no false representation, it is unnecessary for us to consider the element of
 
 scienter.
 
 The defendants were not called as adverse party witnesses. Even assuming
 
 arguendo
 
 that evidence of the condition of the kitchen underneath the stairs, although vague and indefinite, would raise an inference that such area had been constructed in violation of law, there is no showing that the defendants had actual knowledge that it was so constructed. Even if the statements of Mr. Otts, as we have explained above, are considered as the equivalent of implied representations that the apartment was built in conformity with regulations then applicable, there is no evidence from which it can be inferred that he did not believe this to be true (Civ. Code, § 1572, subd. 1; § 1710, subd. 1) or that he had no reasonable ground for believing it to be true. (Civ. Code, § 1572, subd. 2; § 1710, subd. 2.) In addition, since the evidence showed no actual knowledge on the part of the defendants that the base
 
 *85
 
 ment apartment violated regulations in effect when it was built, no liability could be fastened upon the sellers on the theory of their failure to perform an affirmative duty to disclose. (Civ. Code, § 1710, subd. 3; cf.
 
 Curran
 
 v.
 
 Heslop
 
 (1953) 115 Cal.App.2d 476, 480 [252 P.2d 378].) It can be inferred that the defendants must have known the ceiling was only 4 or 5 feet high in some places under the stairs but it cannot be inferred that they knew such condition (whatever it was) was in violation of regulations applicable upon its construction. Nor can such knowledge be inferred from the statement attributed to Arthur Otts that the tenant in the basement apartment would not let anyone in to inspect it.
 

 Finally, a necessary element of a cause of action for fraud or deceit is proof that the “plaintiff suffered damage. ...”
 
 (Hobart
 
 v.
 
 Hobart Estate Co., supra,
 
 26 Cal.2d 412, 422;
 
 Hill
 
 v.
 
 Wrather
 
 (1958) 158 Cal.App.2d 818, 825 [323 P.2d 567]; Civ. Code, § 1709.) Section 3343 of the Civil Code prescribed the rule of measure of damages: ‘‘ One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.” There is no evidence in the record before us of the actual value of the property in question at the time of its sale to the plaintiff. In our view the judgment of nonsuit could be affirmed on this basis alone.
 

 Plaintiff’s remaining contentions can be disposed of briefly. She claims that the defendants in their opening statements to the court made false claims and assertions, that such “unproven” assertions dominated the trial and in effect perpetrated a fraud upon the court. Plaintiff fails to appreciate that the burden was upon her to prove her case by competent evidence, regardless of what the defendants claimed they would prove. As we have already stated, this was carefully and patiently impressed upon her by the trial judge. This she failed to do.
 

 Plaintiff contends that she was not permitted to examine the defendant Arthur Otts. The simple answer is that she never asked to, although, as we have pointed out, the court made repeated inquiries of her as to whether she wished to offer further evidence. She claims the trial judge abused his discretion in conducting the examination of the witness War da. The claim is groundless. On the contrary, the record
 
 *86
 
 shows ceaseless efforts by the court to elicit evidence from the witness because of plaintiff’s obvious inability to try the case in propria persona. She was never denied the right to question Mr. Warda. Finally, plaintiff’s contention that the court erred in not admitting in evidence the deposition of Mr. Otts is answered by the fact that she never offered it.
 

 The judgment is affirmed.
 

 Bray, P. J., and Tobriner, J., concurred.
 

 [1]
 

 The defendant Adelaide Otts also alleged that at the time of the sale she was divorced from Arthur B. Otts and filed a cross-complaint against the latter for indemnity for any liability based upon such a provision in a property settlement agreement between them. These matters need not be discussed.
 

 [2]
 

 The proceedings below took place prior to the 1961 enactment of Code Civ. Proc., § 631.8.
 

 [3]
 

 The court also asked the witness towards the end of his testimony: "Do you know, now, do you have knowledge—don’t tell me what you think . . . whether or not this kitchen was built at the time the property was . . . or . . . afterwards? . . . The Witness: No knowledgé, except the appearance. ’ ’
 

 [4]
 

 The court in an effort to clarify the matter questioned the witness again near the end of his testimony but without much success. The witness responded that he “thought” the 7-foot ceiling regulation went into effect in 1906, but gave no information as to any prior ceiling regulations. His answers on ventilation regulations appear inconclusive in the record—“ [s]inee there was building codes . . . 1906,” the witness stating that he was ‘
 
 ‘
 
 talking about the Town Act and the State Housing Act.”
 

 [5]
 

 The court experienced considerable difficulty in eliciting competent evidence from the plaintiff who appeared in propria persona. The plaintiff was the first witness but all of her testimony was stricken as either hearsay or eonelusionary statements. Upon the suggestion of the court, Mr. Warda was then called. At the conclusion of his testimony, the court then carefully explained to plaintiff that the burden was on her and not on the defendants to prove the charges of fraud, the unlawful condition of the premises, the defendants’ knowledge of such unlawful condition and their intent to defraud.
 

 [6]
 

 These statements were made after efforts by the court to elicit evidence and repeated inquiries as to whether the witness had further evidence. At one point the witness answered the court: "Well, what would you think that I need for further evidence?” All in all, plaintiff’s testimony is a mixture of argument, conclusions, hearsay and some testimonial statements, at times defying separation. The record attests to the efficient, patient and solicitous handling of a difficult situation by the trial judge.