[Civ. No. 7182. Fourth Dist. June 18, 1964.]

DAN McCUE et al., Plaintiffs and Respondents, v. BRUCE ENTERPRISES, INC., Defendant and Appellant.

Fullerton & Morris and Robert V. Fullerton for Defendant and Appellant.

Carroll & Anderson and John P. Carroll for Plaintiffs and Respondents.

COUGHLIN, J.—The plaintiffs, respondents herein, are three married couples, *viz.*, McCue, Heuser and Green; respectively entered into a written contract with the defendant, appellant herein, a subdivider and builder, by which each agreed to purchase from the defendant a lot together with improvements constructed thereon, or to be constructed thereon, by the latter; and brought this action to recover damages on account of fraud and breach of warranty arising out of these transactions. In their complaint setting forth separate causes of action by each couple, the plaintiffs allege that they entered into the foregoing contracts in reliance upon false representations by the defendant that the dwellings upon the property they agreed to purchase were con-

nected with a city sewer, whereas, in truth, each dwelling was connected with a septic tank and leach line located upon the same property as the dwelling; also that the defendant made other false representations respecting the manner of construction and quality of materials used in the improvements upon their respective lots; and that "by reason of the falsity of the representations" so made, each lot was not worth the price paid for it, "said property's true value being at the time of said purchase the sum of $5,950.00." The complaint also contained a cause of action by each group of plaintiffs for breach of a written warranty guaranteeing the construction to be in conformity with approved plans and specifications, based on the claim that the septic tank on each lot had been installed improperly.

As indicated by their respective contracts: The plaintiffs Green purchased their home in July 1959, for $9,500; Heuser in November 1959, for $9,950; and McCue in June 1960, also for $9,950. At the time of purchase, the Green home had not been built; the other two homes were completed. Each contract provided for the sale of a designated lot "with improvements thereon constructed or to be constructed in substantial conformance with plans and method of construction as set forth in plans and specifications on file with the Veterans Administration and/or Federal Housing Administration and described as Plan 2-A." The subject sales were financed through the Federal Housing Administration program.

There was evidence from which the court could have concluded that prior to their respective sales each of the plaintiffs had been told by a salesman for the defendant that the property was within the city limits of the City of Indio and was "on city utilities." The plaintiff, Mr. McCue, testified that the salesman stated: "You have the same utilities that you would have if you was living right up in town." None of them was told that the properties were not connected to a city sewer. In fact, the sewage disposal system for each lot consisted of a septic tank and leach line as called for in the plans and specifications which were referred to in each of the subject contracts. The county health department determined the required capacity of the septic tanks and the required amount of leach line for each unit, which met the minimum standard fixed by the county ordinance and the Federal Housing Administration regulations. This determination was

based on a percolation test upon an adjacent tract, also owned by the defendant, made at the latter's request in 1957. The city issued permits authorizing installation of the septic tanks and leach lines, as specified. Prior to occupancy the improvements on the subject lots had been inspected and approved by the city building inspector, and certificates of occupancy had been issued by the city building department.

The plaintiffs Green entered into occupancy of their place on November 1, 1959; commencing in November 1960, had trouble with their sewage disposal system due to an insufficient percolating area which caused the sewage to back up in the line and to flood their yard; and in March 1962, at a cost of $225, caused 150 square feet of leach line to be added to the system, which rectified the difficulty previously encountered. The plaintiffs Heuser moved into their place in December 1959; commencing in September 1960, had a sewer drainage problem similar to that experienced by the Greens; and in March 1961, at a cost of $200, added 200 square feet of leach line which obviated the trouble. The plaintiffs McCue commenced occupancy on July 4, 1960; about two months later had similar drainage trouble with their system; transferred their property to a man named Otterson, a representative of the beneficiary under the deed of trust against said property, who caused an addition to the leach line to be installed at a cost of $200. The uncontradicted evidence shows that the Green and Heuser systems were working satisfactorily at the time of trial, *viz.*, April 9, 1962. There was no evidence with respect to the McCue system at this time.

On the fraud issue, the court made no finding with respect to the misrepresentations alleged in the complaint. Instead, it found that the defendant "committed fraud against all of the plaintiffs" (1) by not advising them that their homes were not connected with a city sewer; (2) by failing to deliver to them a copy of the Real Estate Division report wherein it was stated that the houses were on a septic tank system; and (3) by selling them real properties with a septic tank and leach line, knowing that it had not prescribed a percolation test to ascertain whether the ground was sufficiently porous for such a system. In addition, the court found that the "value of each house belonging to the plaintiffs, and purchased from the defendant, is $8,500.00." Judgment was entered in favor of each group of plaintiffs for the difference between the contract purchase price of the property they acquired and $8,500.

The findings on the warranty issue will be considered hereinafter.

The defendant appeals and contends, among other things, that the court erred in adjudging it guilty of fraudulent concealment. The basis for this contention is that its agreement with the plaintiffs was to deliver a house constructed in accordance with plans and specifications on file with the Veterans Administration or the Federal Housing Administration; that these plans and specifications provided for a septic tank-leach line sewer system; that the information contained therein was equally available to all parties; that it complied with its agreement in the premises; and, for this reason, the plaintiffs' claim of fraud cannot be sustained. In support of the judgment, the plaintiffs rely upon a fraudulent concealment occurring before the contracts were entered into; claim that except for this concealment they would not have executed those contracts; contend that in representing the properties which they were interested in purchasing were ''on city utilities,'' the defendant assumed the duty of disclosing the true status of all services incident to the use thereof for dwelling purposes; and urge that the failure to disclose the fact that the sewer facilities available to them were of a septic tank-leach line type was fraudulent.

Because of the circumstances attendant upon the instant transactions, we need not determine whether in every instance a vendor is under a duty to disclose to a vendee the type of sewage disposal system servicing the property. (See *Lingsch* v. *Savage*, 213 Cal.App.2d 729, 735 [29 Cal.Rptr. 201].) ▪ Even though there may be no duty upon a vendor to speak upon a subject affecting the desirability of a sale to which he is a party, if he does speak, whether voluntarily or in response to an inquiry, he must make a full disclosure, and may not withhold or conceal any information within his knowledge bearing upon the subject about which he speaks, that materially affects the desirability of the property to be sold. (Civ. Code, § 1710, subd. 3; *Rogers* v. *Warden*, 20 Cal.2d 286, 289 [125 P.2d 7]; *Pohl* v. *Mills*, 218 Cal. 641, 654 [24 P.2d 476]; *Buist* v. *C. Dudley DeVelbiss Corp.*, 182 Cal. App.2d 325, 330 [6 Cal.Rptr. 259]; *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co.*, 168 Cal.App.2d 191, 202 [335 P.2d 995]; *De Spirito* v. *Andrews*, 151 Cal.App.2d 126, 130 [311 P.2d 173]; *Esau* v. *Briggs*, 89 Cal.App.2d 427, 434, 435 [201 P.2d 25].) ▪ When the vendor speaks, the law imposes upon him the duty to make a complete disclosure. Because of this duty,

when he speaks he represents, in substance, that all of the facts within his knowledge material to the subject about which he has spoken have been disclosed. In the event he withholds information material to the subject his representation is false. (*Lingsch* v. *Savage, supra,* 213 Cal.App.2d 729, 736.)

■ In the instant case, whether the statement that the subject properties were ''on city utilities,'' under the circumstances herein, referred to all of those services ordinarily incident to the use of a dwelling house, including sewage disposal service, was a question of fact for trial court determination. ■ In any event, that court was entitled to find that the reference to ''city utilities'' was directed to services furnished by a city and concerned a subject requiring disclosure that the sewage disposal services incident to the properties offered for sale were not furnished by the city, but were supplied by use of a septic tank-leach line system.

■ The defendant's contention, that there was no concealment because the contracts provided for construction in accord with plans and specifications that were available to the plaintiffs for inspection, neglects to take into consideration the fact that the failure to disclose the existence of the septic tank-leach line sewer system preceded execution of the contract by the plaintiffs in reliance upon the assumption that city sewer service was available. In substance, the plaintiffs accepted the defendant's representation, implied in its failure to make a full disclosure in the premises, that the plans and specifications called for connection with the city sewer. In this regard, it is a matter of note that construction of the Heuser and McCue houses had been completed prior to purchase, and there was no occasion for the purchasers thereof to check the plans and specifications respecting such, for the purpose of ascertaining the existence of a connection with the city system. The evidence supports the conclusion that none of the plaintiffs knew the type of sewage disposal system provided for by the plans and specifications in question, or that actually had been installed; also that the defendant knew of the plaintiffs' ignorance in this regard at the time they were told that the properties were ''on city utilities''; and, for this reason, the information within the knowledge of the defendant with respect to the type of sewage disposal system to be installed, or that had been installed, was not within reach of the diligent attention and observation of the plaintiffs within the meaning of the rule requiring a vendor

who speaks upon a subject to speak the whole truth. This conclusion involved questions of fact the determination of which, under the record at hand, was an exclusive function of the trial court. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 748 [192 P.2d 935]; *Lingsch* v. *Savage, supra,* 213 Cal. App.2d 729, 735, 737, 740; *Buist* v. *C. Dudley DeVelbiss Corp., supra,* 182 Cal.App.2d 325, 330; *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co., supra,* 168 Cal.App.2d 191, 202.)

The additional findings on the fraud issue, *viz.,* failure to deliver to the plaintiffs a copy of the Real Estate Division report and selling the subject properties without obtaining a percolation test, are without legal or factual foundation. The omissions in question did not constitute independent acts of fraud within the definition thereof as set forth in section 1710 of the Civil Code. The failure to deliver a copy of the Real Estate Division report to the plaintiffs, although material to the issue of concealment, of itself did not constitute the fraudulent suppression of a fact. Likewise any omission to obtain a percolation test report did not constitute fraudulent conduct. Furthermore, the evidence establishes that the defendant did obtain a percolation test which the government authorities deemed sufficient basis for a determination that compliance with the septic tank-leach line minimum requirements prescribed by the county ordinance would suffice.

The court also found that the defendant breached the terms of a warranty given the plaintiffs at the time of execution of their contracts "in that the septic tanks and leach lines in each dwelling malfunctioned and failed to effectively dispose of the sewage and waste. . . ." The warranty in question was limited to a guaranty that the dwellings located on the properties sold were "constructed in substantial conformity with the plans and specifications . . . which have been approved in writing by the Federal Housing Commissioner. . . ." There is no evidence that the subject septic tanks and leach lines were not constructed in accordance with the plans and specifications referred to. On the contrary, the evidence establishes without conflict that construction of these items conformed to the plans and specifications; were inspected by the building inspector; and were approved. The finding in question premises the breach of warranty upon a failure of the septic tanks and leach lines to effectively dispose of the sewage and waste, and not upon any failure in the construction thereof to conform to the plans and specifications.

The evidence also establishes without conflict that the backup of sewage in the sewer lines and the flooding of the yards was caused by an insufficient percolating area; that this condition was corrected by additions to the leach lines; and that no difficulty has been encountered since installation of these additions. The amount of leach lines originally installed conformed to the plans and specifications. The defendant's contention that the evidence does not support the breach of warranty finding is well taken.

On the issue of damages the court made two findings, one of which was included in its conclusions of law; found that the "value of each house belonging to the plaintiffs, and purchased from the defendant, *is* $8,500.00"; and that "as a result of the said fraud and breach of warranty" the plaintiffs Green were damaged in the sum of $1,000, the plaintiffs Heuser in the sum of $1,450, and the plaintiffs McCue in the sum of $1,450. (Italics ours.) These amounts respectively represent the difference between the value of each of the "houses" as found by the court and the contract price of the property purchased. ■ It would appear that the court was attempting to apply the "out-of-pocket" measure of damages prescribed by that part of section 3343 of the Civil Code which provides that: "One defrauded in the purchase . . . of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received. . . ." The courts have declared that this code section "must be applied realistically so as to give the defrauded person his actual out-of-pocket loss." (*Garrett* v. *Perry*, 53 Cal.2d 178, 184 [346 P.2d 758]; *Buist* v. *C. Dudley DeVelbiss Corp.,* supra, 182 Cal.App.2d 325, 334.) Fundamental to such an application is the giving of due consideration to the established rule that fraud is not actionable unless it results in damage. (*Gonsalves* v. *Hodgson,* 38 Cal.2d 91, 100-101 [237 P.2d 656]; *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 422 [159 P.2d 958]; *Spencer* v. *Anderson,* 193 Cal. 1, 7 [222 P. 355, 35 A.L.R. 822]; *Roberts* v. *Karr,* 178 Cal.App.2d 535, 542-543 [3 Cal.Rptr. 98]; *Valdez* v. *Taylor Automobile Co.,* 129 Cal.App.2d 810, 821-823 [278 P.2d 91]; *Machado* v. *Machado,* 66 Cal.App.2d 401, 405 [152 P.2d 457]; *Wheat* v. *McNeill,* 111 Cal.App. 72, 78 [295 P. 102].) The finding of the trial court that the value of each "house" purchased by the plaintiffs *is* $8,500 does not indicate that the use of the septic tank and leach line instead of a city sewer connection

was a factor involved in the value determination. On the other hand, the statement in the conclusions of law that "as a result" of the fraud which the court found to exist, each group of plaintiffs was damaged in a designated amount, implies a finding that the value of the property purchased was less than the purchase price by reason of such fraud.

 The defendant contends that the evidence does not support such a finding. The only evidence presented to the trial court respecting the value of each "house" was the testimony of a realtor that when he inspected the McCue property, "when there was water standing in the back yard, apparently coming from the leach lines," which was in March 1962, "the value of the property at that particular moment was in the vicinity of eighty five hundred dollars." He further testified that, assuming the condition of the back yard of the Green and Heuser "residences" was substantially the same as that of the McCue "property," his opinion as to value would be the same. It should be noted that the realtor's opinion was based on the condition of the respective properties due to the flooding caused by the inadequacy in length of the leach lines. The opinion was not related to the fact that the property was not connected with the city sewer but was dependent upon a septic tank-leach line system for sewage disposal. The realtor further testified that if the flooding condition on the properties could be alleviated by additions to the leach lines at a cost of $225 per lot, a consideration of this fact would affect his opinion as to the value by raising it "somewhat," but he was unable to state the amount of such a raise. Obviously, the opinion of this witness was not attuned to all of the material facts in the case. In particular, it did not give consideration to the misrepresentation by concealment of the fact that the property was not connected with the city sewer system. The testimony relied upon to support the court's finding on the issue of damages does not establish that the loss found to have been sustained by the plaintiffs, because of the difference between the purchase price and the actual value of their properties, was a result of the defendant's fraudulent conduct.

 Furthermore, "damages for fraud are to be assessed as of the date of the fraudulent transaction." (*Graf* v. *Sumpter*, 207 Cal.App.2d 391, 393 [24 Cal.Rptr. 590].) In determining the difference between the actual value of that which a defrauded person received and that with which he parted as the result of a fraudulent sale, the value of

property received should be determined as of the date of the sale (*Corbett* v. *Otts,* 205 Cal.App.2d 78, 85 [22 Cal.Rptr. 849]), taking into consideration subsequent material circumstances. (*Garrett* v. *Perry, supra,* 53 Cal.2d 178, 185-186; *Graf* v. *Sumpter, supra,* 207 Cal.App.2d 391, 393.) ▮▮ In the case at bar, the realtor testified to the value of the property "at the very moment" of his inspection which occurred in March 1962, approximately two years after the sales. Although the subsequent condition of the property, insofar as it reflected results attributable to a septic tank-leach line rather than a city sewer system was a proper subject for consideration in determining its value at the time of sale, nevertheless, many other factors could have influenced that value between the time of sale and the "moment" when the property was inspected by the realtor and, for this reason, an opinion respecting the value as of the latter date, i.e., two years after sale, does not furnish a basis for applying the code provision rule on damages.

▮▮ In addition, the evidence establishes without conflict that the plaintiffs McCue had transferred their property to someone else prior to trial. The evidence does not disclose the total amount paid by them on their purchase nor the reasonable rental value of the property for the term of its occupancy. They made a down payment of $375 and executed a promissory note, secured by a deed of trust, in the sum of $9,650, payable in monthly installments of $56.46, which represented the balance of the purchase price. Mr. McCue testified that the property was "turned back" to the beneficiary under the trust deed. It is obvious that these plaintiffs did not pay or become liable for the full purchase price. These were factors which the trial court should have considered in determining the actual out-of-pocket loss sustained by them. (*Garrett* v. *Perry, supra,* 53 Cal.2d 178, 184-186.) This is not a situation in which the difference between the value of the property sold and the purchase price determines the difference between the actual value of that which the plaintiffs paid and the actual value of that which they received and thus measures the actual out-of-pocket loss sustained.

The defendant contends that the findings on the issue of damages also are in error because there is no segregation of the amount of damages resulting from the fraud and that resulting from the breach of warranty. The findings in question require interpretation because of the uncertainty resulting from their declaration, in substance, that as a result of

all of the acts of fraud found by the court as well as the breach of warranty, the plaintiffs were damaged in the specific amounts for which they recovered judgment. In reality, the evidence only supports one charge of fraud and does not support the charge of breach of warranty. However, as a new trial must be had in this matter, we deem it unnecessary to consider the merits of this and other additional contentions urged by the defendant as grounds for reversal.

The judgment is reversed.

Griffin, P. J., and Brown (Gerald), J., concurred.